Lani MOORE, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA, et al., Defendants.

Civ. A. No. 87–941.

United States District Court, District of Columbia.

Nov. 30, 1987.

Matthew B. Bogin, Michael J. Eig, Bogin & Eig, Washington, D.C., for plaintiffs.

Deborah M. Miron, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

Plaintiffs seek to collect attorneys' fees and other costs incurred in bringing successful administrative actions under the Education for All Handicapped Children Act ("EHA"), 20 U.S.C. § 1400 *et seq.*

In an earlier opinion in this case, I held that the EHA could be applied to actions which were pending at the time the Act was passed and that attorneys' fees could

be awarded to parties that prevailed at the administrative level in special education cases. *See Lani Moore v. District of Columbia,* 666 F.Supp. 263 (D.D.C.1987). That opinion settled the legal issues in this case and left open only the determination of exactly how much money is owed by defendants to plaintiffs' counsel. Accompanying that Opinion, I issued a detailed Order which spelled out with specificity the information I wanted provided as a basis for determining an appropriate award of attorneys' fees for each case. I ordered that plaintiffs file affidavits with defendants and this court which outlined:

1. the nature of the claim;
2. whether the plaintiff has prevailed on the merits;
3. how many hours were spent on the claim and how this time was spent;
4. the billing rate for this time;
5. the total amount claimed;

I find that plaintiffs have fully complied with my Order.

Preceding my Order, I emphasized that, "The parties are, of course, welcome to attempt to reach agreement between themselves ..." as to the appropriate amount of attorneys' fees. *See Lani Moore v. District of Columbia,* 666 F.Supp. 263, 267 (D.D.C.1987). Unfortunately, the parties were unable to reach a mutually satisfactory settlement of the attorneys' fees at issue in this case. I must therefore make that determination.

At the outset, it is important to note that two discrete attorneys' fees requests are at issue. First, plaintiffs seek $30,910.85 for prevailing on the merits—that is, in the original administrative actions in which the plaintiffs uniformly prevailed. Second, I must decide the appropriate amount of attorneys' fees to compensate plaintiffs for their efforts in the attorneys' fees litigation conducted in this court. Plaintiffs have requested $20,196.07 for this aspect of the litigation.

To make a fair award of attorneys' fees, a number of issues must be resolved. I

must determine the appropriate billing rate for those attorneys who participated in these cases; I must evaluate the appropriate number of billable hours spent on each matter; and I must decide to what extent each plaintiff was the prevailing party. Although this case involves nine individual handicapped children, the following findings apply equally to all individual plaintiffs.

This case has been hotly contested by the parties. Because the arguments made by the parties in their respective papers starkly disagreed in their accounting of the facts, I decided it would be wise to conduct an evidentiary hearing. In so doing, I gave each side an opportunity to be heard and at the same time was able to evaluate the credibility of each side's witnesses. In addition, I enforced defendants' demands for the production of all of plaintiffs' billing records in this case—including each and every one of their handwritten time charges (as well as computer print-outs aggregating those time charges). I have reviewed these documents. Based on the written and testimonial evidence, I make the following findings of fact and conclusions of law.

## A. *The Rate*

The EHA provides that:

For the purpose of this subsection, fee awards under this subsection shall be based on rates prevailing in the community in which the action or proceeding arose in the kind and quality of services furnished ...

20 U.S.C. § 1415(e)(4)(C).

Pursuant to that statutory directive, I award plaintiffs' counsel attorneys' fees for partner time in these cases at the rate of $115.00 per hour except in the two cases where the plaintiffs were billed at an hourly rate of $100.00.[1] The appropriate associate rate is $75.00 per hour except in the *Lani Moore* case, where associate time was billed at $50.00 per hour.

---

1. The two cases where the billing rate was $100.00 per hour are the *Lani Moore* and the *Robert White* cases. Those cases are the "old-est" of the nine cases and the rates charged are now dated.

Although I am awarding plaintiffs only $115.00 per hour in this case, I find that the prevailing hourly rate in this community for the type and quality of legal work performed by plaintiffs' counsel in this EHA case is $125.00 per hour for partners and $75.00 per hour for associates. I find that defendants have paid plaintiffs' counsel this rate several times before—both in the context of settlement and as the result of court decisions.[2]

I have reviewed plaintiffs' counsel voluminous submission of documents and find them to be exceptionally experienced, remarkably active, and highly successful attorneys. They stand in the first rank of those attorneys representing handicapped children under the EHA. Their colleagues in the EHA field have testified to plaintiffs' counsel's customary billing rate and fine reputation. I have witnessed firsthand their performance in several of these cases and have found them to be skilled advocates. In addition to being excellent advocates, they have achieved excellent results for their clients. I have no question that these attorneys are among the finest attorneys engaged in this specialty.

The sole rationale for my reducing the rate to $115.00 per hour in this case is that plaintiffs' counsel voluntarily accepted this court's suggestion that they accept such a rate to help promote the resolution of this matter. In an exhibition of good faith and to indicate their willingness to be flexible, plaintiffs' counsel made this offer unconditionally.

### B. Prevailing Parties

█ There is no question that in each of these nine cases plaintiffs "prevailed." In each case, plaintiffs obtained their objectives—the handicapped child received the placement he or she sought. Defendants raise numerous and varied objections; none have merit.

In the *Morgan Fishman* case, defendants assert that "this case presents the question of an award of attorneys' fees in a case in which there was no determination on the merits." They claim that there was never a determination that the District of Columbia Public Schools' (DCPS) placement of the child was inappropriate—and hence it cannot accurately be said that plaintiff "prevailed entirely." They seek to cut plaintiff's fee request of $8,692.40 down to only $1,096.15—a decrease of over 80 per cent.

The simple facts in this case are that Morgan Fishman sought and obtained placement and funding at the Lab School. Defendants sought to have the plaintiff enrolled in the Deal Junior High School. When that placement failed to be acceptable to a hearing officer, they sought to have plaintiff enrolled at the Buchanan Learning Center. After a series of due process hearings, and several failures by DCPS to come up with a timely and satisfactory placement, defendants agreed to place and fund Morgan Fishman at the Lab School, the private placement selected and sought by plaintiffs. Morgan Fishman went to the school he wanted to attend. He did not have to go where DCPS wanted to send him.

Defendants concede these facts—they are in fact recited in more detail in Defendants' Objections to Amounts of Attorneys' Fees Requested in Plaintiffs' Joint Declaration at 10–15. From these facts, defendants draw the conclusion that "the appropriateness of the DCPS placement was never determined." Defendants proceed syllogistically to conclude that there was no determination on the merits and that plaintiff only received partial relief.

---

2. *See e.g. Callahan v. Mckenzie,* Memorandum Opinion, C.A. 87–0428 (June 15, 1987) (Penn, J.) (awarding plaintiffs' counsel $125.00 per hour for partner time and $75.00 per hour for associate work); *Manley v. District of Columbia,* Memorandum Opinion, C.A. 83–3258 (Nov. 12, 1987) (Penn, J.) (accord); *Mark v. District of Columbia,* Memorandum Opinion, C.A. 86–846 (Nov. 12, 1987) (Penn, J.) (accord); *Cappello v. District of Columbia Board of Education,* Memorandum Opinion, C.A. 79–1006 (Oct. 26, 1987) (Parker, J.) (accord); *see also Muth v. Smith,* Memorandum Opinion and Order, (E.D.Penn.) (Huyett, J.) (Feb. 20, 1987) (accord) [Available on WESTLAW, 1987 WL 7193].

A Plaintiff does not have to achieve complete and total triumph over an entrenched, "never say die" adversary to *prevail*. The Supreme Court has established what it terms a "generous formulation" for deciding if a plaintiff is a prevailing party for purposes of recovering attorneys' fees. In the leading case on this issue, the Court asserted:

A typical formulation is that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some benefit the parties sought in bringing suit.

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citation omitted); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 3280–81, 77 L.Ed.2d 938 (1983) (accord) (citing cases). In this case, defendants surrendered and plaintiffs essentially took the field—Morgan Fishman went to the school of his choice. Granted, neither a hearing officer nor a district court judge adjudicated whether DCPS' proposed placement was appropriate. But, obviously, that decision did not have to be made by a neutral arbiter in this case—defendants gave in to plaintiff's requests on their own volition. In fact, the Supreme Court has held that "the fact that [plaintiff] prevailed through a settlement rather than through litigation does not weaken her claim to fees." *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); *see also J.G. v. Board of Education of Rochester City School District*, 648 F.Supp. 1452, 1458 (W.D.N.Y.1986) (citing *Gagne* with approval in context of prevailing party analysis under EHA). An adversary need not be carried off the field on his or her shield for an opposing party to prevail. As all litigators know, often the strongest cases are those that are never tried.

I therefore find that defendants' claim that plaintiff did not prevail in the *Morgan* *Fishman* case borders on the frivolous and constitutes a gross misunderstanding of the meaning of the term "prevail." Defendants make almost identical attacks in the *Jennifer Daley–Hynes* and the *Anika Cox* cases. They also must be rejected. Each of the nine plaintiffs "prevailed" in obtaining *all* of the "benefits" they sought.

### C. *The Hours and The Adequacy of the Documentation of Plaintiffs' Counsel's Time Charges*

The most contentious and time consuming issue in this case was whether plaintiffs' counsel's requested number of hours reflected an honest and accurate accounting of hours "reasonably" spent and whether the documentation supporting their request was adequate. Defendants claim that the number of hours requested are excessive—and that the documentation of those excessive hours is woefully deficient.[3]

### 1. *Documentation*

■ At every stage of these proceedings, defendants have sought more documentation—regardless of the quality of the information already provided by plaintiffs' counsel. The historical context of the defendants's insatiable thirst for documentation must be borne in mind—up until this case, defendants have paid plaintiffs' counsel attorneys' fees based on their submission of either summaries of time expended or computer print-outs of time charges. These computer print-outs, which were provided to defendants in this case, consist of four entries: the amount of time spent, a short description of how the time was spent, the date the time was spent, and an identification of the attorney who expended the time. At defendants' request, plaintiffs'. counsel also provided them with the underlying time charge-slips which were

---

**3.** The differential between plaintiffs counsel's attorneys' fees request of $30,910.85 for the litigation of the merits of these nine consolidated cases (a figure which excludes the $20,196.07 requested for the attorneys' fees litigation), and defendants' claim that the amount owed for the litigation of the merits is only $8,558.60, is, suffice it to say, astonishingly large. It is remarkable that such a gap remains *after* the parties have completed settlement negotiations, albeit unsuccessfully. It is hard for this court to imagine the amount of defendants' *initial* offer for fees when their ultimate offer was only $8,558.60.

aggregated to form the computer print-outs which collect and detail the individual time-charges into one document. In this case, however, these computer print-outs and time charge-slips were not sufficient to quench defendants' thirst. Defendants asked plaintiffs' counsel for actual "bills" and argued to this court that the law requires the submission of actual bills—not simply an accurate accounting of time charges.

Defendants' request for actual bills makes no sense and finds no support in the law. As defendants are well aware, many of the plaintiffs in EHA cases are unable to pay the going rate for EHA counsel. As a result, the preparation of an actual bill is often a foregone formality—the client is simply incapable of paying for the work. Defendants' request for a bill is also without legal foundation. Defendants rely on *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C.Cir.1984) for the proposition that actual bills must be presented. *Laffey* does not support that claim. Rather, *Laffey* mandates that an application for attorneys' fees should be supported by adequate documentation. *See also National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1337 (D.C.Cir. 1982) (Tamm, J., concurring) (requiring "sufficiently detailed supporting documentation"). Adequate documentation is required—not bills.

Actual bills would provide this court with no more information than it already possesses. Plaintiffs' counsel have provided more than adequate documentation. They have more than met the legal standard for specificity and detail. Their time records are detailed to the tenth of the hour. *See Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) (plaintiffs' counsel not required to present "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney"). Plaintiffs' counsel's testimony has convinced this court beyond any reasonable doubt that the time they have recorded in their time-charges was actually spent working on the case and that their system of documentation is accurate and sufficiently de-tailed to permit a meaningful review of their attorneys' fees request. The documentation meets the legal standard.

## 2. *Reasonableness*

In addition to their dissatisfaction with the documentation of the hours expended, defendants challenge the reasonableness of the time spent by plaintiffs' counsel. Defendants contend that not only are plaintiffs' counsel inflating the total number of hours spent, but also that they have spent that time unwisely. Their complaint boils down to an attack on the efficiency and integrity of plaintiffs' counsel. In light of the ultimate outcome of the nine cases at issue here, defendants' criticism rings hollow. My observations of plaintiffs' counsel's efforts in the attorneys' fees aspect of this litigation run counter to defendants' claim of unproductivity and inefficiency. Plaintiffs' counsel are both effective and efficient. A comparison of the respective parties' pleadings bears witness to that conclusion. I am convinced that plaintiffs' counsel have spent, and have sought attorneys' fees for less time, in the aggregate, than the amount of time devoted to this case by defendants' counsel. It is therefore hard for me to accept realistically defendants' counsel's attacks on the productivity and efficiency of plaintiffs' counsel. Measured against the performance of their counterparts, plaintiffs' counsel are remarkably productive and efficient.

Moreover, defendants' criticisms are of the "nit-picking" variety which this Circuit has warned against. *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1337–8 (Tamm, J., concurring) ("Neither broadly based, ill-aimed attacks, nor nit-picking claims by the Government should be countenanced").

Both at the evidentiary hearing and repeatedly in their briefs, defendants criticized plaintiffs' counsel for having partners handle their own scheduling—they contend that such matters could be handled more efficiently by either a paralegal or by secretaries. *See* Defendants' Objections to Amounts of Attorneys' Fees Requested in

Plaintiffs' Joint Declaration at 9, 17, 18, 21, etc. Such a criticism must be considered "nit-picking."

In addition, defendants' criticism of plaintiffs' counsel's scheduling practices is not well received in light of both the facts of this case and this court's own scheduling practices. During the evidentiary hearing, plaintiffs' counsel and other EHA attorneys' testified that it is extremely difficult to deal with DCPS on scheduling matters. I credit their testimony. Scheduling hearings and meetings with DCPS is unfortunately a time consuming matter. It is time consuming through no fault of plaintiffs' counsel. I find that much of the time spent by plaintiffs' counsel on scheduling matters is the direct result of DCPS' own practices. Moreover, I am reluctant to find fault with plaintiffs' counsel's penchant for handling their own scheduling because I require attorneys in charge of the litigation to be present at status conferences to handle scheduling matters. It has been this court's experience that dealing with proxies on scheduling matters often leads to conflicts, delays, missed appearances and generally inadequate results. Finally, aside from being "nit-picking," defendants' criticism of plaintiffs' counsel's allocation of responsibility for scheduling amounts to an attack on their staffing methods. Plaintiffs' counsel's staffing patterns have explicitly been found to be an inappropriate topic of inquiry in attorneys' fees litigation by this Circuit. *See generally Laffey v. Northwest Airlines*, 746 F.2d 4, 25–26 (D.C.Cir.1984) (deference to marketplace for prevailing rate "obviates the need to set a 'true' staffing pattern to go along with the 'true value' set on the firm's services").

Plaintiffs' counsel testified before this court about the productivity of the hours they expended. They testified about their billing practices and explained the discretion they used to pare down their hours to reflect only productive and billable time. *See National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d at 1326. They also testified about the integrity of their billing system. I credit their testimony. In fact, my careful obser-

vation of plaintiffs' counsel's method of staffing the attorneys' fees aspect of this case and the briefs they submitted in this court strongly indicates the efficiency of plaintiffs' counsel. Their briefs are short and to the point. They waste little effort. Based on their overall performance, I find that plaintiffs' counsel staff their cases in a reasonable and efficient manner.

### D. *The Nature of this Litigation*

In *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1324 (D.C.Cir.1983) (Tamm, J.), a panel of this Circuit expressly warned that "contests over fees should not be permitted to evolve into exhaustive trial-type proceedings."

I fear that because of defendants' remarkable intransigence, that in fact is what has happened here. As the circuit court emphasized, the danger of permitting attorneys' fees contests to become full blown trial-type affairs is that attorneys may be deterred from undertaking EHA actions. This would undercut Congress' intent when it incorporated an attorneys' fees provision in that Act. Based on the arguments I have heard and the testimony given at the evidentiary hearing, I find that the District has adopted a "do not settle, do not pay" stance vis a vis plaintiffs' counsel. The facts in this case permit no other explanation. Attorneys' fees litigation is costly, time-consuming and when undertaken either in bad faith or with no hope of success, notably unproductive. Time is unnecessarily wasted and costs are senselessly incurred. Nothing is obtained in return.

Lani Moore, the named plaintiff in this case, obtained the private school placement she sought in the Summer of 1985. Plaintiffs' counsel represented Ms. Moore at the administrative hearings in July and August of 1985 which led to her placement. It is now late November, 1987, and plaintiffs' counsel have yet to receive a nickel from the District of Columbia in the *Lani Moore* case, or for that matter, in any of these cases.

There can be no doubt that the District of Columbia has adopted a deliberate policy of delay in these cases. In the attorneys' fees aspect of this litigation alone, defendants have asked this court for at least nine separate extensions of time.[4]

Leaving aside the legality of the policy, I find it patently unfair that defendants have withheld *all* the attorneys' fees at issue here—even the amount that defendants concede they owe—during the pendency of the litigation over the disputed amount.

It is clear to me that the District has decided to stonewall plaintiffs' counsel. Plaintiffs' counsel have suggested a number of theories to explain defendants' intransigence. I am not interested in such speculation. I simply want the policy to come to a halt. The wall must come down. The scenario that occurred in this case should not be repeated. The District must strive in the future to resolve attorneys' fees disputes through prompt, good faith negotiations.

E. *Summary of Findings and Conclusions*

■ 1. Each of the nine plaintiffs was a prevailing party.

2. The prevailing community rate for the work performed in this case is $125.00 for partners and $75.00 per hour for associates. Defendants, in fact, have previously paid these counsel those rates both in settlements and pursuant to court orders. Pursuant to a voluntary agreement with this court, plaintiffs' counsel have reduced their attorneys' fees request to $115.00 per hour for partner time in this case.

3. The documentation provided in this case was more than adequate. Plaintiffs' counsel presented accurate records. Their customary practices for accounting for time satisfy the legal requirements for attorneys' fees requests. The hours spent were productive and reasonable.

4. The amounts requested for attorneys' fees by plaintiffs' counsel in their Proposed Findings of Fact and Conclusions of Law are reasonable. However, in this case, pursuant to the agreement to set the rate for partner time at $115.00 per hour, rather than the $125.00 per hour requested, the overall fee award has been reduced from the $51,106.92 requested by $2,632.40 to $48,474.52. This reduction reflects the $10.00 reduction in the rate for partner hours.[5] The overall award reflects $29,-357.45 for the litigation on the merits at the administrative hearings and $19,117.07 for the attorneys' fees litigation before this court. A complete breakdown and summary of the hours, rates and costs for each of the nine cases and the attorneys' fees litigation is attached to this Memorandum Opinion and Order as an Appendix.

5. The $50.00 per hour requested for the services of an educational diagnostician in the *Lani Moore* case is a reasonable rate for such services. The request for reimbursement for the 28 hours productively spent is reasonable. This amount is incorporated in the overall award.

6. The $75.00 per hour requested for the services of a clinical psychologist in the *Jennifer Daley–Hynes* case is a reasonable rate for such services. The request for reimbursement for the 11.5 hours productively spent is reasonable. This amount is also incorporated in the overall award.

7. The defendants have unreasonably delayed the progress of this litigation. They have made burdensome and overbroad requests and have caused plaintiffs' counsel to spend an inordinate amount of time litigating for attorneys' fees.

---

4. It is worth noting that the EHA provides a specific provision which functions to *permit* the recovery of attorneys' fees for excessive time spent providing legal services when a State or local educational agency "unreasonably protracted the final resolution of the action." *See* 20 U.S.C. §§ 1415(e)(4)(F) and (G). In this case, despite defendants' delays, plaintiffs were able to avoid expending excessive time. Had they spent "excessive" time, it very likely would have been because defendants "unreasonably protracted" the resolution of this case. Plaintiffs' counsel would therefore still be entitled to collect fees if they were able to show that the excessive time was traceable to defendants' delays.

5. The $100.00 hours in the *Lani Moore* and *Robert White* cases have not been adjusted upward.

Plaintiffs' counsel's request for attorneys' fees for litigating the attorneys' fees issues is granted.[6] The excessive time devoted to litigating the attorneys' fees issue is because of defendants' intransigence.[7]

8. The defendants' scorched earth policy in this attorneys' fees case led directly to the expenditure of a great deal of extra time and effort on the part of all counsel. I would hope that in the future the defendants will be more selective and prudential in the manner and method in which they litigate attorneys' fees cases.

Based on the foregoing Memorandum Opinion, it is hereby

ORDERED that judgment is entered for plaintiffs; and it is further

ORDERED that defendants shall promptly pay plaintiffs' counsel the $48,337.42 it owes plaintiffs in attorneys' fees and costs. Said payment shall be made no later than fifteen days from the issuance of this Order; and it is further

ORDERED that plaintiffs' counsel shall reimburse plaintiffs for any payments they have made to counsel and that they shall make appropriate payments to their experts;

## APPENDIX

### Total Attorneys' Fees for Litigation of the Merits

|  |  | Rate | Hours | Total |
|---|---|---|---|---|
| Lani Moore | Michael Eig | $100.00 | 43.7 | $4370.00 |
|  | Matthew Bogin | 100.00 | 1.0 | 100.00 |
|  | Laura Solomon | 50.00 | 28.0 | 1400.00 |
|  | Costs | — | — | —0— |
|  | TOTAL AWARD | — | — | $5870.00 |
| Morgan Fishman | Michael Eig | $115.00 | 65.8 | $7567.00 |
|  | Matthew Bogin | 115.00 | .75 | 86.25 |
|  | Beth Goodman | 115.00 | 3.30 | 379.50 |
|  | Costs | — | — | 119.31 |
|  | TOTAL AWARD | — | — | $8152.06 |

6. The appropriate rate for partner time for the attorneys' fees litigation is also $115.00 per hour. Defendants contend that plaintiffs' counsel should receive a lower hourly rate for litigating the attorneys' fees than they receive for the merits. *See* Defendants' Response to Plaintiffs' Fee Statement at 1 ("A reduced rate is appropriate for fees requested for work performed on applications for attorney's fees."). This contention is not supported by the law. *See Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 29 (D.C.Cir. 1984) (holding that fee per hour for litigating the attorneys' fees issue can be at the rate customarily charged by the law firm making the claim).

7. Defendants have requested that plaintiffs' counsel provide them with more documentation and a more detailed breakdown of their request for attorneys' fees for litigating the fees issue. *See generally* Defendants' Response to Plaintiffs' Fee Statement. At some point, a potentially endless cycle must stop. I have reviewed plaintiffs' counsel's request for attorneys' fees for litigating the fees issue before me. I have also witnessed firsthand the sequence of events in the fees aspect of this matter. I find plaintiffs' counsel's request reasonable.

| Jennifer Daley-Hynes | Matthew Bogin | $115.00 | 29.85 | $3432.75 |
| | Vicki Swanson | 75.00 | 1.90 | 127.50 |
| | Marilyn Fuchs | 75.00 | 11.50 | 862.50 |
| | Costs | — | — | 68.71 |
| | TOTAL AWARD | | | $4491.46 |

------------------------------------------------------------

| Peter Cook | Matthew Bogin | $115.00 | 7.0 | $ 805.00 |
| | Costs | — | — | 9.21 |
| | TOTAL AWARD | | | $ 814.21 |

------------------------------------------------------------

| Anika Cox | Matthew Bogin | $115.00 | 17.5 | $2012.50 |
| | Beth Goodman | 75.00 | 1.5 | 112.50 |
| | Costs | — | — | 27.25 |
| | TOTAL AWARD | | | $2152.25 |

------------------------------------------------------------

| Robert White | Matthew Bogin | $100.00 | 16.25 | $1625.00 |
| | Costs | — | — | 12.55 |
| | TOTAL AWARD | | | $1637.75 |

------------------------------------------------------------

| Kelly Rastatter | Matthew Bogin | $115.00 | 23 | $2645.00 |
| | Costs | — | — | 15.71 |
| | TOTAL AWARD | | | $2660.75 |

------------------------------------------------------------

| Michael Holmes | Matthew Bogin | $115.00 | 23.95 | $2754.25 |
| | Costs | — | — | 41.65 |
| | TOTAL AWARD | | | $2795.90 |

------------------------------------------------------------

| Takoma Hampton-Day | | | | |
|---|---|---|---|---|
| | Michael Eig | $125.00 | 1.2 | $ 150.00 |
| | Beth Goodman | 75.00 | 8.3 | 622.50 |
| | Costs | — | — | 10.77 |
| | TOTAL AWARD | | | $ 783.27 |

Overall Total Award for the Nine Cases = $29,357.45

Total Attorneys' Fees Award
For The Attorneys' Fees Litigation

| NAME | RATE | HOURS | TOTAL |
|---|---|---|---|
| Matthew Bogin | $115.00 | 31.50 | $ 3622.50 |
| Michael Eig | $115.00 | 76.40 | 8786.00 |
| Beth Goodman | $ 75.00 | 31.90 | 2392.50 |
| Bradford Johnson | $ 75.00 | 35.05 | 2628.75 |
| Vicki Swanson | $ 75.00 | 11.00 | 825.00 |
| Gayle Rosen | $ 25.00 | 1.50 | 37.50 |
| Total Attorneys' Fees | | | $18,292.25 |
| Costs | | | 824.82 |
| TOTAL AWARD | | | $19,117.07 |