**Lark MEDFORD, et al., Plaintiffs,**

v.

**The DISTRICT OF COLUMBIA, et al., Defendants.**

**Christopher SWAINGIN, et al., Plaintiffs,**

v.

**The DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. Nos. 87–1949, 88–0023.**

United States District Court, District of Columbia.

July 13, 1988.

interim regulations.  *See* Exh. H to Motion to     Dismiss at ¶¶ 1(B), 3(B)(1).

Michael F. Eig, Matthew B. Bogin, Bogin & Eig, Washington, D.C., for plaintiffs.

Jeffrey M. Ford, Asst. Corp. Counsel, District of Columbia, Washington, D.C., for defendants.

*Memorandum Opinion and Order*

SPORKIN, District Judge.

Plaintiffs in these two cases seek to collect attorneys' fees and other costs incurred in bringing successful administrative actions under the Education for All Handicapped Children Act ("EHA"), 20 U.S.C. § 1400 *et seq.*

Defendants interpose two basic legal defenses. They contend attorneys' fees should not be available for administrative proceedings. They also contend that the Act should not apply retroactively. In addition, defendants object to plaintiffs' designation of these cases as related to other cases pending before me.

Defendants also object to granting attorneys' fees on several factual grounds. They allege that in certain cases plaintiffs have not prevailed on the merits, that the amounts plaintiffs seek are unreasonable, that the hourly rates sought are improper, and that certain time was spent unproductively.

Because none of defendants' legal or their factual arguments has merit, the plaintiffs are entitled to summary judgment.

## THESE ARE RELATED CASES

█ These cases can only be understood in relation to an earlier matter I adjudicated, *Lani Moore v. District of Columbia,* C.A. 87-0941. In that case, I addressed and resolved the same legal issues raised in both of these cases. *See generally Lani Moore v. District of Columbia,* ("*Lani Moore I* "), 666 F.Supp. 263 (D.D.C. 1987). The Act can be applied retroactively. *Id.* Fees can be awarded to parents who prevail in administrative proceedings. *Id. See also* 20 U.S.C. § 1415(e)(4)(B).

I also addressed factual disputes strikingly similar to those at issue here in determining an appropriate attorneys' fees award in *Lani Moore. See generally Lani Moore v. District of Columbia,* ("*Lani Moore II* "), 674 F.Supp. 901 (D.D.C.1987).

In that case, plaintiffs submitted a great deal of material and presented extensive testimony to support a rate of $125.00 per hour for partners and $115.00 per hour for associates for the type and quality of work performed by plaintiffs' counsel. *Id.* at 903. Nevertheless, to expedite resolution of the matter, plaintiffs' counsel accepted a rate of $115.00 per hour for partners and $75.00 per hour for associates. *Id.* at 903. Based on this material and testimony, I found plaintiffs' counsel's documentation adequate and their time reasonably and productively expended, contrary to defend-

ants' contention that they had padded or inflated their bills. *Id.* at 905–906.

I also set forth the standard for "prevailing" in this sort of a controversy. Parties that obtain what they reasonably seek—whether through a negotiated settlement or via combat-like litigation—"prevail" for purposes of the award of attorneys' fees. *Id.* at 903–904.

Plaintiffs in *Lark Medford* attached a related case designation to the Complaint they filed in the District of Columbia District Court on July 16, 1987. According to the *Lark Medford* plaintiffs—whose counsel are the same as the counsel in *Lani Moore*—their case was "related" to *Lani Moore*, which was pending before me on the merits at that time, because the legal issues were identical and the underlying facts were remarkably similar.[1] *Lark Medford* involves claims for attorneys' fees by twenty-six handicapped children (or their representatives) who have prevailed in at least one due process hearing; have incurred attorneys' and/or experts' fees; and have submitted a claim for reimbursement to DCPS. Defendants have either denied or ignored all of these claims. Last year, the nine plaintiffs in *Lani Moore* were in essentially the same position as these twenty-six handicapped children find themselves now. They had prevailed at due process hearings and had been denied reimbursement. They sought attorneys' fees in federal district court.

Similarly, plaintiffs in *Swaingin* attached a related case designation to their Complaint when they filed it on January 6, 1988. They did so for the same reasons that the *Lark Medford* plaintiffs had done so. The legal and factual issues in that case were similar to those in both *Lark Medford*, which of course was then pending on the merits before me, and *Lani Moore*, which by that time was resolved. According to the *Swaingin* plaintiffs:

> The issues and facts presented in the instant multi-plaintiff action regarding prevailing parties at DCPS administrative hearings and the reimbursement of attorneys' fees and costs to prevailing parties are nearly identical to the issues and facts presented in *Medford*.

*See Swaingin*, Plaintiffs' Opposition to Defendant's Objection to Related Case Designation, Motion for a Stay and Motion for Enlargement of Time at ¶ 5. All three cases raise the same legal issue of whether handicapped children who prevail in administrative due process hearings brought pursuant to the EHA are entitled to attorneys' fees under the Handicapped Children's Protection Act of 1986, Public Law 99–372 ("HCPA"). It would make no sense to have several different district court judges review the same legal issue—particularly when the matter is now on appeal.[2]

Defendants nevertheless oppose my exercising jurisdiction over these cases on a "related case" basis because of alleged factual differences. Such opposition is without merit. Even though defendants correctly contend that each individual handicapped child's proceeding involves some separate "factual" issues, such variation is insufficient to undercut the efficiency rationale for finding these cases to be related. The fact that identical legal issues are involved in all three cases greatly outweighs any argument for splitting these cases up based on trivial factual variances between each handicapped child's experience with the bureaucracy.[3]

---

**1.** My first opinion in *Lani Moore* was issued July 29, 1987. The second opinion in that case, "*Lani Moore II*," was issued November 30, 1987. *Lani Moore* therefore undoubtedly was "pending on the merits" when *Lark Medford* was filed. *See* Local Rule 3–4(2).

**2.** *Lani Moore* is presently on appeal before the D.C. Court of Appeals.

**3.** In fact, defendants have submitted briefs in these cases that are verbatim copies of briefs submitted in one or more of the earlier cases.

*Compare, e.g.* Defendants' Opposition to Plaintiffs' Motion for Summary Judgment in *Swaingin* with an identically entitled brief submitted in *Lark Medford*. The usage of almost identical, canned briefs, including the repetition of arguments regarding, *i.e.*, retroactivity, that are simply irrelevant to the pending proceeding, undercuts the integrity of defendants' claim that these cases are unrelated. It also makes it hard to understand the basis for defendants' repeated requests for extensions of time to research and prepare such briefs. *See infra.*

Defendants seem to suggest, for instance, that because in the case of one handicapped child they challenge the reasonableness of a certain number of telephone calls—while in another case they challenge the reasonableness of the conduct of certain legal research—that the two cases are therefore not related. As a result, they argue that attorneys' fees litigation "must of necessity be decided by the court on an individualized, case-by-case determination." *See Lark Medford,* Defendants' Objection to Related Case Designation at 1.

Were defendants' conception of these cases to control, the proceedings and attorneys' fees dispute for *each* handicapped child would constitute a "case"—and would be a separate district court litigation. According to such reasoning, not only would *Lani Moore, Lark Medford* and *Swaingin* be unrelated, but also each of those cases should be split into its individual components. *Swaingin,* which involves a collection of five handicapped children's attorneys' fees disputes brought by the same counsel, would be five cases, *Lark Medford* would be twenty-six cases and *Lani Moore* would have been nine cases. The ultimate result of the method defendants urge would be 40 separate cases pending before numerous different district court judges. The dockets of the federal district court for the District of Columbia would become jammed with EHA attorneys' fees cases.

Defendants are responsible for the large number of rejected attorneys' fees claims. As discussed in *Lani Moore II,* and further discussed below, defendants' refusal to negotiate a fair fee award in a reasonable fashion is the principal cause of this onslaught of cases. In addition, many fee claims are simply not processed by defend-ants. They are ignored. Defendants, of course, have every right to take a tough stance. The courts, however, must develop a way of disposing of such matters expeditiously. Plaintiffs' suggestion that these cases are related is a measured and reasonable response to defendants' tactics. Plaintiffs' counsel cannot be expected to wage simultaneous contests in the court of every federal district court judge in the District of Columbia in order to collect attorneys' fees for matters in which they have prevailed on the merits. To force them to do so would only compound an already bad situation. Because treating these cases as related achieves great economies and preserves scarce judicial resources, defendants' arguments must be rejected.[4] The related case rule must be enforced. These cases are related and they are properly before me.

THE MERITS

As discussed above, the legal issues in this case are controlled by my ruling in *Lani Moore.* Plaintiffs' submission of virtually identical briefs regarding the legal issues in these three cases corroborates this conclusion. Attorneys' fees may be awarded to parties who prevail in administrative proceedings. Attorneys' fees are awardable in each of the handicapped children's cases before me—they were all brought after July 3, 1984. *See Lani Moore I,* 666 F.Supp. at 264 ("Though passed in late 1986, the Act provided that attorneys' fees would be awardable for any action brought ... after July 3, 1984"). Moreover, because both of these cases were brought after the passage of the HCPA, the appropriateness of retroactive application of the Act, which was an issue in *Lani Moore,* is not an issue in these cases.[5]

---

**4.** As discussed below, the defendants' method of conducting these litigations greatly heightens the judicial resources that potentially can be conserved by consolidating these cases where appropriate. Defendants invariably ask for a large number of extensions of time, require more than the usual number of status conferences, file repetitive pleadings and frequently require extensive oversight after judgment has been entered. The scorched earth tactics employed by defendants, apparently designed to frustrate plaintiffs' counsel, have the unfortunate by-product of squandering the time and resources of the judicial system. It would be wasteful to multiply these burdens many times over and to impose them on numerous other judges by unnecessarily splitting these cases up.

**5.** In fact, not only were the attorneys' fees proceedings in *Swaingin* and *Lark Medford* brought after the passage of the HCPA, but also, counsels' records reflect that the vast majority of the

## THE AMOUNT OF FEES

A fair and accurate determination of fees is necessarily a fact-intensive and time-consuming enterprise. The general framework for determining an appropriate fee award remains the same:

> I must determine the appropriate billing rate for those attorneys who participated in these cases; I must evaluate the appropriate number of billable hours spent on each matter; and I must decide to what extent each plaintiff was the prevailing party.

*Lani Moore II* at 902. In addition, I must evaluate the adequacy of the documentation of plaintiffs' counsels' time charges. *See generally Lani Moore II* at 904–906. Because almost all of the defendants' arguments made in the two cases now before me were raised previously in *Lani Moore,* they serve as the basis for my present analysis.

Plaintiffs have fully complied with my requirement that they file affidavits outlining with specificity for each handicapped child's case:

> billable events at issue took place after Congress enacted the HCPA in August, 1986. As counsel in *Swaingin* points out, *"all* matters raised.... occurred after August, 1986 ..."* See Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment at 5 (emphasis added).

**6.** Plaintiffs' counsel have specialized in enforcing important rights created by the EHA. Their efforts have made an important difference in the lives of many handicapped children—who otherwise might not be receiving appropriate educational services. Their work exemplifies our legal profession's best traditions. The hourly rate is amply justified.

Nevertheless, defendants ascribe sinister and evil motives to these counsel. As will be discussed herein, defendants have accused plaintiffs' counsel of padding their bills and trying to obtain unreasonable fees for work done inefficiently. Perhaps most troubling, however, is defendants' charge in *Lark Medford* that "there is in this case an inherent conflict of interest." *Lark Medford,* Defendants' Opposition to Plaintiffs' Motion for Class Certification at 8. According to defendants:

> Counsel for plaintiffs is both the counsel that the fees will ultimately accrue to, and the counsel that seek to represent the class. Thus counsel will at some point be faced with decisions where he will have to choose between his own financial well being and the good of

1. the nature of the claim;

2. whether the plaintiff has prevailed on the merits;

3. how many hours were spent on the claim and how this time was spent;

4. the billing rate for this time;

5. the total amount claimed;

*Lani Moore II* at 902.

### A. The Rate

█ Counsel in *Lark Medford* are the same as counsel in *Lani Moore.* The appropriate hourly rate is the same—$115.00 per hour for partners and $75.00 per hour for experts.[6]

Counsel in *Swaingin* are different. At the administrative level, they achieved excellent results for their clients. The briefs they submitted regarding attorneys' fees are first-rate. They are concise, to the point and persuasive.[7] Nevertheless, defendants, in a section entitled "Plaintiffs' Inflated Undocumented Claims Fail to State a Claim Upon Which Relief can be Granted," argue as follows:

> the putative class. Plaintiffs' counsel's interest in this action is so entwined with that of the class that he is a *de facto* member of the putative class. As such an improper conflict of interest is inherent in the dual role of a a party as class representative and class counsel. When such a conflict arises counsel serving in such dual capacities must be disqualified.

*Id.* Defendants have offered no evidence that plaintiffs' counsel have in any way neglected their clients' interests or placed themselves in a compromised position, and neither the record nor the structure of this litigation supports levelling such serious charges. In fact, in every child's case, plaintiffs' counsel have scrupulously avoided simultaneously negotiating fees and merits. The conduct of plaintiffs' counsel is in conformity with all relevant ethical rules and defendants' allegations are baseless and frivolous. *See generally Evans v. Jeff D.,* 475 U.S. 717, 106 S.Ct. 1531, 1540, 89 L.Ed.2d 747 (1986); *see also Id.,* 106 S.Ct. at 1557 (Brennan, J. dissenting); *Moore v. National Association of Securities Dealers, Inc.,* 762 F.2d 1093 (D.C.Cir.1985).

7. *See e.g., Swaingin,* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment; *Swaingin,* Supplemental Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment.

Of course, in both *Stebbing* and *Moore*, counsel [Bogin & Eig—counsel in *Lark Medford*] provided the Court with evidence regarding their legal education, their longstanding experience in handling matters of this type, their involvement in a large number of significant special education decisions and their authorship of various publications regarding the rights for handicapped children.

On the other hand, counsel here [Wulkan] ... surely cannot be presumed to have attained a level of expertise anywhere near that of the counsel in the *Moore* case. As a matter of fact, plaintiffs' counsel has only been practicing law since 1982, as such, it is impossible to conceive how she would be entitled to a hourly rate comparable to that of counsel in the *Moore* case.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at 8–9. Defendants therefore suggest that "... $75.00 per hour is a reasonable compensation for this counsel. This is in line with the rate that the Court found reasonable for associate time in the *Moore* case." *Id.* at 9.

Defendants' contentions are without merit and are needlessly insulting and argumentative. *Swaingin* lead counsel's declaration indicates extensive experience in special education law and a record of responsible and effective participation in an impressive array of public interest litigation. Both her teaching responsibilities and her effective leadership roles in large class actions attest to her capabilities. Her commendable performance in this litigation reflects her considerable experience. At a time when first year associates are being billed out by many private law firms at over $100.00 per hour, her requested rate of $100.00 per hour is a bargain for the services of such an experienced litigator. As the *Swaingin* plaintiffs have requested, the hourly rate in that case is $100.00 per

hour for partners and $50.00 per hour for associates.[8]

### B. *Prevailing Parties*

■ In both *Swaingin* and *Lark Medford*, all of the Due Process Appeals were resolved, either through a hearing or concession by defendants, in favor of the plaintiff handicapped children. In *Lark Medford*, defendants do not contest plaintiffs' assertion that each child prevailed. In *Swaingin*, however, defendants contend that two children, Christopher Swaingin and Michael Hoffman, failed to prevail for purposes of an award of attorneys' fees. Their contention is without merit.

In the case of Christopher Swaingin, defendants' argument is easily set forth—it consists of the following sentence: "Defendants object to the award of fees in this case because the Hearing Officer's Determination does not establish nor support plaintiffs' contention that they were the 'prevailing party.'" *Swaingin*, Defendants' Opposition to Plaintiff's Motion for Summary Judgment at 11. The sole apparent basis for this claim is that the Hearing Officer did not write the magic words "plaintiff prevails" in her Determination of the Due Process Hearing. Form has never been elevated so far above substance.

Christopher Swaingin, an autistic child, obtained precisely what he initially sought: a District of Columbia Public Schools ("DCPS") funded special education program while he is at St. Elizabeth's Hospital. Prior to the Due Process Hearing, which triggered a settlement between the parties, Christopher had not received any special education services at St. Elizabeth's. Christopher's parents requested such services, but were rebuffed by both DCPS and St. Elizabeth's. *See* Plaintiffs' Motion for Summary Judgment, Exhibit I–B (Legal Memorandum entitled "Request for Attorney's Fees Pursuant to Handicapped Children Protection Act of 1986";

---

**8.** Another benefit of treating these cases as related is that it provides one judge the chance to compare arguments made in the context of one case with those made in another for purposes of evaluating their consistency. For instance, defendants' praise of the talents and expertise of counsel in *Lark Medford* in their briefs in *Swaingin* is helpful in evaluating the credibility of their harsh views of the same attorneys' skills in those cases where those counsel seek fees for themselves—*Lani Moore* and *Lark Medford*.

Exhibits 2 and 3). After the hearing, Christopher began to receive one-to-one educational services from an instructor with special skills in communicating with emotionally disturbed and autistic children. *Id.* In other words, Christopher Swaingin received the educational services he sought. He prevailed over DCPS' attempts to deny him such services. In the same sense that Morgan Fishman prevailed, *see Lani Moore II* at 903–904, Christopher Swaingin prevailed. *See also Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) (fact that party prevailed through settlement and not litigation does not weaken party's claim to fees).

Similarly, in the case of Michael Hoffman, defendants contend that because the Hearing Officer deliberately chose not to make a finding regarding which party prevailed, plaintiffs cannot have prevailed. Plaintiffs sought placement of Michael at the Lab School. DCPS proposed that Michael be placed in the Lafayette Special Education Program. A due process hearing was convened, and after the hearing began and testimony had been taken, DCPS agreed to fund Michael at the Lab School. Defendants nevertheless contend that because the Hearing Officer deliberately refused to decide which party had "prevailed," that plaintiff did not prevail. Plaintiff prevailed. A specific finding by the Hearing Officer on the issue of "prevailing party" is not a prerequisite to an award of attorneys' fees in EHA cases. What is required is success on the merits. *See generally Lani Moore II* at 903–904. Achievement of the plaintiff's objectives is the benchmark. In this case they were attained.

### C. *The Hours and the Adequacy of the Documentation of Plaintiff' Counsels' Time Charges*

Defendants object to both the documentation supporting the request for attorneys' fees and the reasonableness of the time spent by plaintiffs' counsel.

Evaluating the adequacy of the documentation submitted by plaintiffs need not take long. The documentation submitted by counsel in both *Swaingin* and *Lark Medford is adequate.* The counsel in *Lark Medford* were also counsel in *Lani Moore.* They have continued to use the same method of documentation utilized in *Lani Moore.* I approved that method in *Lani Moore II, see generally* pp. 904–906, and there is no reason to depart from that holding here. Counsel in *Swaingin* have adopted a strikingly similar methodology. The principal difference is that whereas counsel in *Lark Medford* measure time by the tenth of the hour, counsel in *Swaingin* account for their time by the minute. The documentation in both cases is satisfactory.

Defendants also mount challenges similar to those raised in *Lani Moore II* to the reasonableness of the time spent. In particular, defendants attack the efficiency of plaintiffs' counsel, their integrity, their staffing decisions, and level a host of "nit-picking claims" regarding plaintiffs' counsels' expenditures of time. I have addressed these concerns in some detail in *Lani Moore II, see* pp. 905–906. There is no need to repeat any of that discussion here. Three matters, however, continue to be the subject of particular concern to defendants, and hence deserve further attention.

First, defendants attack at great length all of plaintiffs' counsels' use of the telephone. They make numerous complaints about the particularity of the descriptions of certain telephone calls. In a few instances, defendants may be justified in their concern that the reason stated for a telephone call is somewhat vague or unclear because it is described in insufficient detail. For the vast majority of their telephone calls, however, plaintiffs' counsel provide sufficiently detailed explanations of their calls. Plaintiffs are not required to document the "exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *See Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (*en banc*) (quoted in *McKenzie v. Kennickell,* 645 F.Supp. 437, 447–48 (D.D.C.1986)). Furthermore, many of the telephone calls challenged are of very short duration. For

such calls, it makes little sense to require plaintiffs' counsel to spend as much time describing the call for billing purposes as they spend making the call. Such an outcome would be in neither party's interest. Some perspective must be retained when evaluating an attorneys' fee request. As in the private sector, counsel can develop a reputation for integrity and fairness in billing practices. Here, based on both my experience with plaintiffs' counsel, and defendants' failure to unearth any instance where plaintiffs' counsel misled the court or exaggerated an expenditure of time, I find that plaintiffs' counsel have described their telephone calls with sufficient detail for me to find the time spent on the telephone was spent reasonably and productively.

In addition, defendants in several instances contend that an arbitrary time limit should be placed on the duration of telephone calls. Many of the calls at issue were made in lieu of an in-person meeting. Such a practice should be encouraged. It may save much time. An arbitrary time limit for telephone calls would be counterproductive and is rejected.

■ Second, defendants contend that:

The question arises as to when counsel's right to such fees accrue ... The language of the statute does not contemplate legal representation on behalf of any party until an educational program has been proposed and a due process hearing has been requested and scheduled. As such, plaintiffs' counsel should only be allowed compensation from the time when an aggrieved party requests a due process hearing.

*Swaingin,* Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at 9; *Lark Medford,* Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at 8. There is no basis for this position either in the EHA or in the attorneys' fees caselaw.

I have already held that attorneys' fees are available for administrative proceedings. *See generally Lani Moore II.* Once fees are permitted for such proceedings,

fees must also be allowed for the preparatory work attendant upon bringing an administrative action. Nothing in the EHA prohibits fee awards for time reasonably and necessarily spent prior to the formal initiation of proceedings.

Time spent by an attorney preparing for an administrative proceeding is analogous to time expended in a civil case by an attorney prior to filing a complaint. The Supreme Court's treatment of such "getting ready" time in *Webb v. Board of Education of Dyer County,* 471 U.S. 234, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985), is equally applicable in this context. As the Court stated:

Of course, some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed "on the litigation." Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case.

(footnote omitted). In *Webb,* therefore, the Court accepted as established law that work done prior to the formal inception of a proceeding is subject to a fee award—in the same fashion that such work is compensated as a matter of course in the private sector. As Justice Brennan stressed:

... it is settled that a prevailing party may recover fees for time spent before the formal commencement of the litigation on such matters as attorney-client interviews, investigation of the facts of the case, research on the viability of potential legal claims, drafting of the complaint and accompanying documents, and preparation for dealing with expected preliminary motions and discovery requests. This time is "reasonably expended on the litigation" in part because careful pre-filing investigation of the facts and law is required by the ethical rules of profession and the Federal Rules of Civil Procedure, and the realities of civil rights litigation.

*Id.,* 105 S.Ct. at 1932–33 (Brennan, J., concurring in part and dissenting in part) (cita-

tions and footnotes omitted).[9] The same ethical and professional standards prevail in an administrative forum. Therefore, such time is reasonably expended before a Due Process Hearing.

Likewise, expenditures of such time prior to administrative proceedings will have the same benefits as in a civil litigation context. As Justice Brennan emphasized in *Webb:*

> Taking testimony at an administrative hearing may reduce or eliminate the need for interviewing and deposing witnesses later after suit is filed, and negotiation with administrative officials may narrow disputes and sharpen issues in the very same way as settlement discussions held after the litigation begins.

*Id.,* 103 S.Ct. at 1933. These benefits were obtained in both *Swaingin* and *Lark Medford.* In both cases, disagreements about individual IEPs were resolved only after the commencement of administrative proceedings. Because of work completed by plaintiffs' counsel prior to the Due Process Hearing, such a hearing was obviated. Administrative legal work completed prior to the commencement of a Due Process hearing may be subject to a fee award, within the discretion of the trial judge, if the time is "reasonably expended." *Hensley v. Eck-*

*erhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

■ Third, defendants object to the award of fees for time expended in Individualized Education Programs ("IEPs").[10] According to defendants, the HCPA explicitly prohibits the award of attorneys' fees for participation by counsel in IEPs. The statute is silent. Defendants also argue that since the EHA implementing regulations, "do not provide for the assistance of counsel at IEP meetings," attorney participation is not compensable. *See Swaingin,* Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at 10; *Lark Medford,* Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at 8–9. The regulations neither require nor prohibit the attendance of counsel at the IEPs. Rather, consistent with the statute, the regulations provide that participants in IEPs *shall* include a representative of the public agency; the child's teacher; one or both of the child's parents; and where appropriate, the child. *See* 34 C.F.R. § 300.344(a)(1)–(4). The regulations therefore neither require nor prohibit the presence of counsel. However, the regulations provide that IEPs may also include other participants, including "[o]ther individuals at the discretion of the parent or agency." 34 C.F.R. § 300.344(a)(5).[11] Counsel *may* attend.[12]

9. *See also* 2 M. Derfner & A. Wolf, *Court Awarded Attorney Fees* ¶ 16.02[2][b], p. 16–15 (1984).

10. The IEP is the "primary vehicle" for accomplishing the goals of the EHA. *Honig v. Doe,* —— U.S. ——, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988). The IEP, which is mandated for each handicapped child,
> ... sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives. 20 U.S.C. § 1401(19).

11. In fact, to remedy DCPS' violations of handicapped children's rights, Hearing Officers often require plaintiffs' counsel to participate in the development of an appropriate IEP in an effort to protect the handicapped child's substantive rights and the parents' right to meaningful participation in decisions concerning the education of their disabled children.

12. Defendants also claim that an exchange of remarks between Congressman Williams, one of

the EHA's prime sponsors, and Congressman Bartlett, an opponent of some provisions of the Act, explicitly prohibits the award of attorneys' fees for the attendance of counsel at IEP meetings. The exchange, which occurred during debate over the 1985 version of the Act and not the 1986 version that was enacted, went as follows:
> MR. BARTLETT: Mr. Speaker, section 2 of H.R. 1523 amends section 615(e)(4) of the Education of the Handicapped Act by adding the following new provision:
> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees, expenses, and costs to the parents or guardian of a handicapped child or youth who is the prevailing party.
> Could you clarify the meaning of the terms "action" and "proceedings?"
> MR. WILLIAMS: The term "action" is intended to include a civil action filed in a State or Federal Court. The term "proceeding" is limited to the due process hearing that parents are required to exhaust under 615(b)(2) and the State appeal under section 615(c). The

Whether such attendance by counsel in a given case meets the *Hensley* "reasonably necessary" test for a fee award depends on the factual circumstances in that case. In each case at issue before me, the parents exercised their discretion and asked counsel to participate in the IEPs. Counsel's participation in the IEPs uniformly resulted in favorable results. I find that in each instance where counsel attended IEPs, that attendance contributed to their eventually prevailing in the case. On that basis alone, fees may be awarded.[13]

Nothing in the EHA precludes attorneys' fees for preparatory work or for attorney participation in IEPs. Contrary to defendants' assertions, providing fee awards for such work will not disrupt the administrative process—it may well serve to improve its functioning. Therefore, if parents seek assistance of counsel at the IEPs, and they ultimately "prevail" either in an administrative proceeding or in court, then attor-

neys' fees may be awarded for the time devoted by counsel to the IEP *if* the time was reasonable and necessary to obtaining the relief ultimately obtained.[14]

Equal opportunity to education is a right for all Americans. *Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954) ("... it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms."). Congress gave meaning to *Brown* for handicapped children when it enacted the EHA in 1975 and "conferr[ed] upon disabled students an enforceable substantive right to public education." *Honig v. Doe,* —— U.S. ——, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988) (citing *Board of Education of Hendrick Hudson Central School Dist. v.*

---

term "proceeding" is not intended to include meetings held to develop individualized education programs or meetings to make decisions concerning such matters as the identification, evaluation, or placement of handicapped children. 131 Cong.Rec. H 9968 (Nov. 12, 1985).

Mr. Williams' statement does not address the question of whether fees for work done prior to the commencement of the administrative hearing process may be recovered once an action has been commenced. At most it may be interpreted as indicating that the fees provision of the EHA can only be triggered by the commencement of an action or proceeding.

Contrary to defendants' suggestion, the statement does not prohibit an award of fees for either an IEP meeting or for any other reasonably necessary activity completed prior to a Due Process Hearing—so long as there is a subsequent Due Process Hearing (or any other "action" or "proceeding"). In other words, when the plaintiffs need to commence an administrative proceeding to obtain what they have been denied in an IEP, they are entitled to recover for all their preliminary work, including participation in IEP meetings.

Since the challenged fee requests for participation in IEPs all involve cases where an administrative proceeding was commenced, I need not consider whether attorneys' fees may be awarded for participation in IEPs when a plaintiff "prevails" before an administrative proceeding is commenced.

**13.** Even if it were to be assumed, *arguendo,* that counsel's attendance at IEPs was not an integral

part of the preparatory work necessary to prevail at the administrative hearing, and hence was "optional," it may still be subject to a fee award. As the Court held in *Webb,* fees may be awarded for a "discrete portion" of work done in an optional administrative proceeding to the extent it was "useful and of a type ordinarily necessary" to the successful outcome of the subsequent litigation (or administrative proceeding). *Webb,* 103 S.Ct. at 1928, 1929; *See also Webb,* 103 S.Ct. at 1929–30 (Brennan, J., dissenting in part and concurring in part). In these cases, counsels' preparatory work and their participation in the IEPs was "useful and of a type ordinarily necessary to advance" the handicapped child's interests. The work contributed to the successful outcome. *See Webb, supra,* 103 S.Ct. at 1929. The time spent is therefore compensable. *Id.*

**14.** Contrary to the position they have taken in this case, defendants have heretofore acquiesced in the award of attorneys' fees for both participation in IEPs and general preparatory work before a Due Process Hearing. *See e.g., Lani Moore II,* "Charge List for Ms. Arlene ——," (fee request for 1.5 hour IEP conference at Lab School and call to client); *Marlon Lester Mark v. District of Columbia,* C.A. No. 86–0846, Memorandum Order and Opinion, November 12, 1987 (Penn, J.) [available on WESTLAW, 1987 WL 12003], (fees paid for 3.25 hours of attorney participation in IEP for Marlon Lester Mark at Walker Jones—*see* "Charge List for Dr. Jorie Mark"). Defendants have also paid fees for such participation in numerous settled cases.

*Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). In so doing, Congress sought "to assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of handicapped children and their parents or guardians are protected." *Id.* 108 S.Ct. at 596.

In order to effectuate that fundamental right, defendants' administration of the EHA needs to be reformed. I have presided over a number of EHA cases in the past two years. *See, e.g., Lani Moore I, Lani Moore II, Jonathan Holmes v. District of Columbia,* C.A. No. 87–0762, *Sallie Marie Collins v. District of Columbia,* C.A. No. 87–2597, *Lark Medford v. District of Columbia,* C.A. No. 87–1949, *Christopher Swaingin v. District of Columbia,* C.A. No. 88–0023, *Matthew Treanor v. District of Columbia,* C.A. No. 88–0108. As a result, I have gained some insight into what is happening in the administration of this program. The defendants' "do not settle, do not pay" stance, *see Lani Moore II* at 906, has intensified. Unexcused delay of the sort I have witnessed in these two cases and other EHA fee cases, *see e.g., Sallie Marie Collins,* is unacceptable. Repeated requests for extensions of time to file briefs that are identical to those submitted in other actions, *see e.g., Swaingin,* and failure to meet deadlines established by the rules of the district court have prolonged these cases unnecessarily. *See e.g., Swaingin,* Defendants' Opposition to Plaintiffs' Motion for Summary Judgment (brief "borrowed" from previous pleadings sub-

mitted after scheduled hearing and after deadline that was extended several times).[15]

CONCLUSION

For the foregoing reasons, plaintiffs' motions for summary judgment are granted. Plaintiffs are entitled to attorneys' fees in accordance with this Opinion for litigating the merits of these cases.

The hours requested by plaintiffs for time expended on the merits are approved as reasonable. The rate in *Lark Medford* shall be $115.00 per hour for partners and $75.00 per hour for associates. The rate in *Swaingin* shall be $100.00 per hour for partner time and $50.00 per hour for associate time—except for attorney time expended after January 1, 1988. The rate in *Swaingin* after January 1, 1988 shall be $115.00 per hour for partners and $75.00 per hour for associates.[16]

Plaintiffs in each case shall submit within ten days a proposed Appendix which conforms in substance and style to the Appendix attached to my Memorandum Opinion and Order in *Lani Moore II.* The proposed Appendix shall reflect appropriate recalculations made in accordance with this Memorandum Opinion and Order.

In each case, plaintiffs also shall submit a final, comprehensive summary of attorneys' fees and costs for the fees aspect of the litigation. Appropriate aspects of this summary shall also be presented in the form of a proposed Appendix.

Defendants shall have ten days to call to my attention any concerns they may have about plaintiffs' proposed Appendices. This Memorandum Opinion and Order rep-

---

**15.** Other courts have treated issues as conceded when these defendants have failed to submit timely pleadings. *See e.g. Marlon Lester Mark v. District of Columbia, et. al.,* C.A. 86–846, Memorandum Opinion and Order, November 12, 1987 (Penn, J.) (awarding fees to counsel for *Lark Medford* in EHA case because defendants failed to meet filing deadlines); *see also* Local Rule 1–9(d), which states:

Within ten days of the date of service or such other times as the Court may direct, an opposing party shall serve and file a statement of points and authorities in opposition

to the motion, together with a proposed order. If such opposing statement is not filed within the prescribed time, the Court may treat the motion as conceded.

**16.** This rate reflects *Swaingin* plaintiffs' counsel's increase in her billing rate at the turn of the year to $125.00 per hour for partner time and $75.00 per hour for associate time. The rate for partner time has been adjusted to conform with the rate I fixed for counsel for *Lark Medford.*

resents a final adjudication of these attorneys' fees cases.