**Mary E. COLLINS, Mary F. Caples, and Anna M. Vendola**

v.

**PENSION BENEFIT GUARANTY CORPORATION and M & M Transportation Company Pension Plan.**

**Civ. A. No. 88–3406.**

United States District Court, District of Columbia.

May 16, 1989.

---

Mark A. Borenstein, Tuttle & Taylor, Inc., Los Angeles, Cal., Stephen R. Bruce, Washington, D.C., for plaintiffs.

Isreal Goldowitz, UMWA Health & Retirement Funds, Office of the Gen. Counsel, Peter H. Gould, Pension Benefit Guar. Corp., Office of the Gen. Counsel, Washington, D.C., for defendants.

## MEMORANDUM

AUBREY F. ROBINSON, Jr., Chief Judge.

Ripe for disposition is Defendant's Motion to Strike Related Case Designation. The complaint in this action was designated as related to *Rettig v. Pension Benefit Guaranty Corp.*, No. 82–0517 (D.D.C.) and *Peich v. Pension Benefit Guaranty Corp.*, No. 82–1131 (D.D.C.) (hereafter referred to jointly as *Rettig/Peich*), two consolidated class actions in which a settlement agreement was reached. Defendant contends that this case cannot be considered as related to *Rettig/Peich* because (1) *Rettig/Peich* are no longer "pending on the merits" as contemplated by Local Rule 405(a)(3)(iii) and (2) the complaint here does not "grow out of the same event or transaction" that was involved in *Rettig/Peich*. For the reasons that follow, the motion shall be denied.

## BACKGROUND

*Rettig/Peich* involved a challenge to regulations implementing the phase-in provisions of ERISA. ERISA, termed a "comprehensive and reticulated statute," *Nachman Corp. v. PBGC*, 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), *quoted in Rettig v. PBGC*, 744 F.2d 133, 136 (D.C.Cir.1984), did several things to protect workers' expectations of a pension. First, it established minimum vesting standards, which insured that when an employer provided for pension benefits the right to benefits vested pursuant to a statutory minimum requirement; employers could allow vesting at earlier periods, but could not impose vesting requirements more stringent than the three alternative minimum vesting requirements. *See Rettig*, 744 F.2d at 136.

Second, ERISA established a plan termination insurance scheme to guarantee payment of benefits to vested beneficiaries when the pension plan was terminated without sufficient funds to pay out nonforfeitable (i.e., vested) benefits. *Id.* at 136–37. PBGC was the entity charged with guaranteeing these vested benefits. *Id.* at 137. Relatedly, ERISA provided that benefits need not be fully guaranteed where plans had been in effect less than five years prior to termination; similarly, increased benefits resulting from an amendment enacted within five years of the plan's termination need not be fully guaranteed. *Id.*; 29 U.S.C. § 1322(b)(7). In cases of these plans and amendments, ERISA's "phase-in provision" provided that only 20% of the benefits should be guaranteed for each year the plan or amendment

had been in effect (i.e., if the plan or amendment had been in effect one year prior to termination, 20% of the benefit, if it was the plan itself, had to be guaranteed and 20% of the increase, if an amendment was concerned; if the plan or amendment had been in effect for two years, 40% of the benefit or benefit increase had to be guaranteed.) *See* 744 F.2d at 137; 29 U.S.C. § 1322(b)(7). The primary purpose of this rule was to prevent employers from abusing the insurance scheme by enacting plans or amendments increasing the amount of benefits shortly before plan termination. 744 F.2d 137, 152.

In *Rettig/Peich*, PBGC had argued that amendments to plans to bring the vesting standards into conformity with the minimum vesting standards of ERISA were amendments subject to the phase-in provision. *Id.* at 138–40. Under this approach, if an employer enacted an amendment to the pension plan to bring the plan into conformity with ERISA's minimum vesting standard and then the plan was terminated within five years, an employee's vested benefits were subject to the phase-in rule; if the plan terminated a year after the amendment, only 20% of the vested benefit would be guaranteed and paid by PBGC.

The Court of Appeals upheld PBGC's contention that amendments that provided for earlier vesting could be considered as amendments "increas[ing] the amount of benefits," and thus subject to the phase-in provision. *Id.* at 152. It held, however, that PBGC had failed to provide a reasoned explanation supporting its conclusion that amendments that only brought vesting requirements up to ERISA's mandated levels should be subject to the phase-in provision, since it was undisputed that these type amendments did not and could not present the danger of employer abuse, the evil aimed at by the phase-in provision. *Id.* at 152–56.

Following remand, plaintiffs amended their complaints, pursuant to court order granting their motions to amend, to include class allegations. The class allegations attacked defendant's phase-in regulations generally, and sought to raise claims on behalf of pensioners whose plans had been amended to comply with ERISA's minimum vesting schedules as well as those whose plans had *not* been amended; in effect, plaintiffs argued that ERISA amended the plans as a matter of law and thus unamended plans had to be treated the same as plans that had been amended to comply with ERISA's minimum vesting schedules. In their motion for class certification, plaintiffs sought certification of the following class:

> All pension plan participants and beneficiaries who participated in pension plans which terminated between January 1, 1976, and December 31, 1981, and who were denied pension benefits by the Pension Benefit Guaranty Corporation as a result of the Phase-in Limitation, 29 U.S.C. § 1322(b), to ERISA mandated vesting amendments.[1]

Joint Motion for Certification of Class Action at 1–2, *Rettig v. PBGC*, No. 82–0517 (D.D.C. motion filed October 17, 1986).

In large part, defendant did not oppose the motion for class certification. It did, however, after stating that it was unsure whether plaintiffs intended to include as class members beneficiaries of plans that had not been amended to comply with ERISA, object to including beneficiaries of such unamended plans as members of the class. Response of PBGC to Motion for Class Certification at 12–13 (filed Nov. 17, 1986). Plaintiffs responded that these beneficiaries should be part of the class, because the plans should be deemed to have been amended by ERISA and thus such plans were the same as plans that had been amended to comply with the minimum vesting requirements. Plaintiffs' Reply Memorandum at 11–24 (filed Nov., 25, 1987). Plaintiffs did note, however, that because the issue whether unamended plans should be deemed and treated as amended was purely a question of statutory construction and thus a matter of law, the Court could

---

1. The term "ERISA mandated vesting amendments" was intended by plaintiffs to include amendments plaintiffs insisted were implied by law by ERISA even if no formal amendment to the plan had been adopted to bring the plan into compliance with ERISA.

include unamended plan participants in the class, but defer final decision on whether unamended plan participants were entitled to relief until after the trial. *Id.* at 24.

The Court did not explicitly resolve the issue. But it granted plaintiffs' motion and certified a class using the same definition of the class as provided by plaintiffs' motion.

The parties then settled; a settlement agreement was approved by the Court in July of 1987. As part of the settlement agreement, the definition of the class was changed, to make clear that beneficiaries of unamended plans were not part of the class and thus not entitled to relief under the settlement agreement. The settlement agreement also provided that the Court was to retain jurisdiction over the matter, until the settlement agreement was fully implemented.

This suit was filed in late November of last year. Plaintiffs are participants of a pension plan that was terminated in 1977, when the company with which plaintiffs were employed declared bankruptcy. PBGC became the plan's trustee. Plaintiffs allege that they have satisfied the minimum vesting requirements of ERISA, but they did not satisfy the vesting requirements of the plan, which the employer failed to amend to bring it into compliance with ERISA. PBGC contends that it was not required to guarantee and pay benefits because it is only required to "guarantee the payment of all nonforfeitable benefits ... *under the terms of a plan.*" 29 U.S.C. § 1322(a) (emphasis added). Since the plan had not been amended to comply with ERISA[2], defendant argues that the benefits which plaintiffs seek were not "nonforfeitable benefits ... under the terms of a plan"; their right to the benefits had not vested under the terms of the plan. In addition, it appears that PBGC will argue that the phase-in provision applies should the Court conclude that plaintiffs' benefits

are "nonforfeitable benefits ... under the terms of [the] plan."

Plaintiffs designated this case as related to *Rettig/Peich,* pursuant to Local Rule 405(a)(3), which requires that the earlier case still be "pending on the merits" and that the two cases "grow out of the same event or transaction." Defendant moved to strike the related case designation and to have the case randomly assigned. Plaintiffs then added as an alternative basis for the related case designation Local Rule 405(a)(4), which is applicable when a case involves the same parties and the same subject matter as a case that has previously been dismissed.

DISCUSSION

a) *Local Rule 405(a)(3):*

The test for relatedness has two components. First, the earlier case must still be "pending on the merits" at the time the later case is filed. Second, the two cases must "grow out of the same event or transaction."

1) *"Pending on the Merits":*

As can be expected, there is very little case law on what the drafters of the Local Rule intended by the term "pending on the merits." Only one case involves the D.C. Local Rule, and in that case there was very little doubt that the earlier case was still pending on the merits when the second was filed; the second was filed before any ruling was rendered on pending motions for summary judgment. *Medford v. District of Columbia,* 691 F.Supp. 1473, 1474-75 & n. 1 (D.D.C.1988). There are a few cases construing local rules requiring the earlier case to be "pending" for the related case rule to be satisfied, and PBGC does not really argue that *Rettig/Peich* is not "pending," but PBGC insists that this Court has imposed a more restrictive test by requiring the earlier case to be "pending on the merits" and not simply "pending." Assuming this to be true, it is nevertheless clear that *Rettig/Peich* is still "pending on the merits."

2. According to the Answer, the time in which the employer had to amend the plan did not expire until after the plan was terminated. Answer of Defendant Pension Benefit Guaranty

Corp. at ¶ 26, *Collins v. Pension Benefit Guaranty Corp.,* No. 88-3406 (D.D.C. filed Feb. 17, 1989).

The short answer to PBGC's argument that the case is not pending on the merits is that the Court retained jurisdiction and did not enter an order dismissing the case. Aside from this somewhat technical answer, the parties may very well need to litigate issues that must be considered "merits" issues; simply because the validity of the phase-in regulations, the main legal issue raised by *Rettig/Peich*, will not be litigated because of the settlement agreement,[3] that does not mean that all future litigation will not involve "merits" determinations. For example, the parties dispute who and what plans are covered by the settlement agreement. Although resolution of this dispute will require interpretation of the settlement agreement's definition of the "Plaintiff class," the resolution will in effect be an adjudication of the merits of persons claiming inclusion within the class; persons who the Court concludes are not within the definition of the "Plaintiff class" will have their claims for benefits denied, albeit without prejudice.[4]

### 2) *The same event or transaction requirement:*

■ PBGC's argument that the cases do not involve the same event or transaction appears to be that the Court may not reach the phase-in issue if it agrees with PBGC that they were not required to guarantee the benefits because the benefits were not "nonforfeitable ... under the terms of a plan." 29 U.S.C. § 1322(a). Because there is a potentially dispositive issue present here not present in *Rettig/Peich*, defendant argues that the cases do not involve

the same legal issue and are not transactionally related.

Defendant's argument is unconvincing. If the court agrees with plaintiffs that ERISA impliedly amended the plans, and therefore that the benefits were "nonforfeitable ... under the terms of a plan," *id.*, PBGC intends to apply its phase-in rule, the same rule challenged in *Rettig/Peich*. This is sufficient to conclude that the two cases grow out of the same event or transaction. *Cf. Medford v. District of Columbia*, 691 F.Supp. 1473 (D.D.C.1988) (individual decisions by defendant to deny applications for attorneys fees based on success at administrative level related).

### b) *Rule 405(a)(4):*

This rule provides for related case designation if a later-filed second case involves the same parties and relates to the same subject matter as an earlier action that was dismissed with or without prejudice. Although this ground was presented in Plaintiffs' Reply, and as an alternative argument, it is perhaps a stronger argument.

This rule also entails a two-fold inquiry. First the two cases must involve the same parties; second, the two cases must relate to the same subject matter.

As noted above, the amended complaint filed after remand was broad enough to encompass claims for benefits under unamended plans. And the parties specifically addressed, in the motion for class certification, whether beneficiaries of unamended plans should be included within the class; and the Court initially agreed with plaintiffs that they should be. Thus, the two

---

**3.** Indeed it is not impossible that plaintiffs will need to litigate this issue. There is authority for the proposition that if a settlement agreement is repudiated or materially breached, enforcing the settlement agreement is not the only remedy and the non-breaching party can litigate the issues intended to be settled by the agreement. *Warner v. Rossignol,* 513 F.2d 678, 683 (1st Cir.1975). Thus, until the obligations under the settlement agreement are discharged, even the main legal issue decided by the settlement agreement can be considered as still pending until an order of dismissal is entered.

**4.** Indeed, PBGC implicitly recognizes this when it addresses plaintiffs' alternative claim that the

case is related because it involves the same parties and relates to the same subject matter involved in *Rettig/Peich*. PBGC recognizes that the decision to exclude beneficiaries of unamended plans can be construed as a dismissal without prejudice. PBGC's Reply Memorandum at 8 n. 7 ("Although plaintiffs' exclusion from the *Rettig/Peich* class may amount to a dismissal without prejudice, this case does not 'relat[e]' to the same subject matter' for the same reasons that it does not 'grow out of the same event or transaction.'"); *cf. Ross v. Warner,* 80 F.R.D. 88, 90 (S.D.N.Y.1978) (amendment to complaint reducing size of class tantamount to a "dismissal" for excluded individuals).

**8**

cases involve the same parties. And PBGC agrees that the final decision to exclude beneficiaries of unamended plans from the class can be viewed as tantamount to dismissal without prejudice. Reply Memorandum at 8 n. 9; *see also Ross v. Warner*, 80 F.R.D. 88, 90 (S.D.N.Y.1978) (amendment to complaint reducing potential size of class tantamount to a "dismissal" for excluded individuals).

PBGC contends, however, that the two cases do not relate to the same subject matter for the same reasons that they do not grow out of the same event or transaction. For the same reasons discussed above, PBGC is wrong. Indeed, the claim that they relate to the same subject matter is perhaps stronger than the claim that they grow out of the same event or transaction. The subject matter of plaintiffs' claim is the nature of their rights under a pension plan that the *Rettig/Peich* plaintiffs contended, at least early in the remand proceedings, should have been covered in the initial litigation; this subject matter is present in both cases, regardless of whether PBGC refused to guarantee and pay these benefits as part of the same event or transaction involved in *Rettig/Peich*.

CONCLUSION

*Rettig/Peich* is still pending on the merits and the instant case grows out of the same event or transaction. Alternatively, the instant case involves the same parties involved in *Rettig/Peich* and relates to the same subject matter. The motion to strike related case designation therefore shall be denied. An appropriate Order accompanies this Memorandum.