Jason ROSSI, et al., Plaintiffs,

v.

Arthur GOSLING, et al., Defendants.

Civ. A. No. 88–0127–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 3, 1988.

Diane M. Smith, Smith & Kaufman, Washington, D.C., for plaintiffs.

Cynthea L. Perry, Deputy County Atty., Arlington County Atty.'s Office, Arlington, Va., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

Plaintiffs bring this novel action under the Handicapped Children's Protection Act of 1986 (HCPA or the Act), 20 U.S.C. §§ 1415(e)(4)–(f), to obtain attorneys' fees and costs incurred in securing residential educational services for Jason Rossi, an emotionally disturbed sixteen year old. Plaintiffs are Jason Rossi and his mother, Pamela Rossi, and defendants are the Arlington County School Board (School Board) and Arthur Gosling, Superintendent of Arlington County Public Schools (ACPS).[1] Defendants move for summary judgment. As a result, three questions are presented for decision:

1. Does the HCPA authorize the award of attorneys' fees where, as here, the

---

1. John Davis, Superintendent, Virginia Department of Education, was also named as a defend-ant but was dismissed by consent order.

matter was resolved prior to the due process hearing?

2. Were the plaintiffs the "prevailing parties" under the HCPA?

3. Even assuming the HCPA allows the award of fees in this case, should the Court exercise its discretion to deny fees given the circumstances of this case?

The parties submitted affidavits, briefs and stipulated facts. At the hearing, the Court indicated it would decide the matter without further hearing or argument. This, it appears, was unwarranted optimism. For the reasons stated in this Memorandum Opinion, the Court concludes, on the novel first question, that the HCPA authorizes fees even when the dispute is resolved without the need for a due process hearing. The Court further concludes, however, that the remaining two issues cannot be resolved without a further evidentiary hearing; material facts appear to be genuinely in dispute.

## FACTS [2]

Jason Rossi is a sixteen-year-old special education student, most recently diagnosed as seriously emotionally disturbed. As a first grader, Jason was identified by the School Board for special education services. In November, 1979, he was diagnosed as learning disabled and placed in a self-contained education classroom. He remained there until 1982 when he was placed in regular classes. Jason's parents decided to place him in private school for the sixth grade. After failing the sixth grade at this school, he was returned to Arlington Public Schools.

In February, 1984, Jason entered the School Board's Interlude Program. This program, designed for children with severe learning, emotional, neurological or social adjustment problems, combines individualized education and structured activity with therapy and family counseling. The parties agree that the Interlude Program appeared then to be satisfactory for Jason. Accordingly, he returned to the program for the 1986–87 school year. Regrettably,

however, Jason's condition worsened. On February 6, 1987, Jason was admitted to the Psychiatric Institute of Washington, D.C. for depression and suicidal statements. Jason's attending physician reported that Jason was in a regressed condition with a behavioral disorder.

Reports concerning Jason's condition were received by the School Board on March 3, 1987. Roberta Felker, Supervisor of Special Education Programs and Services for ACPS, scheduled a meeting of the Special Education Review Committee (Review Committee) for March 23, 1987. Felker informed Mrs. Rossi that the purposes of meeting were twofold: (1) to review Jason's current educational program and (2) to discuss alternative programs. Members of Review Committees typically include School Board staff members who have worked with the student to be discussed or who can offer expert opinion on an appropriate placement for the student. The meetings are informal, and parents are not required to attend, although they are encouraged to do so.

Mrs. Rossi attended the March 23 meeting. According to the minutes of that meeting, apparently prepared by an employee of ACPS's Student Services and Programs department, Mrs. Rossi reported that Jason was functioning well academically, but that "re-entry into the home environment would be emotionally damaging to him." The minutes recite that the Psychiatric Institute anticipated that Jason would be released from the hospital in two weeks. The minutes also reflect that the Institute was assisting in identifying a residential placement for Jason. The Review Committee recommended that the School Board wait until specific statements or recommendations were in hand from Mrs. Rossi or the Psychiatric Institute regarding Jason's residential placement before deciding on an appropriate educational program. The minutes further state that the Review Committee members agreed that Arlington Public Schools would pay the cost in the

2. The Court's findings of fact are based on the parties' Joint Statement of Facts as well as the undisputed documentary evidence.

event of a residential placement. Additionally, the Review Committee agreed to meet again to discuss the most appropriate interim placement for Jason if hospital release occurred before a residential placement could be made.

At Mrs. Rossi's request, the Review Committee met again on March 24, 1988. According to the minutes of this meeting, the Committee (1) requested that Mrs. Rossi substantiate the physician's recommendation that Jason be placed in an alternative program and (2) recommended that "[u]pon receipt of this verification, ... Jason be placed in an alternative placement with a therapeutic component." In her affidavit in opposition to defendants' motion for summary judgment, Mrs. Rossi denied that Committee members ever stated that they would approve a residential placement if given additional information. Mrs. Rossi's understanding was that the School Board was opposed to a residential placement for Jason. On the other hand, Dr. Van Den Heuvel, the School Board's Supervisor of Student Services, believed Mrs. Rossi was undecided about whether she wanted Jason to remain in Interlude. According to Van Den Heuvel, the School Board was willing to approve a residential placement as soon as it received adequate evidence of the need for such a placement.

On March 27, 1987, Mrs. Rossi requested a due process hearing regarding her son's placement. In her letter, she notified the School Board that her attorney was Diane Smith. Dr. Van Den Heuvel, by letter dated April 3, 1987, advised Smith that a due process hearing would be scheduled and that further inquiries should be directed to Mark Towery, Assistant County Attorney. A hearing was scheduled for May 12, 1987.

Jason returned to the Interlude Program on April 2, 1987. After a disappearance from school and home, Jason was hospitalized on April 24, 1987, at Dominion Barcroft Hospital for continuing treatment of depression and acting-out behavior.

By letter dated April 14, 1987, Assistant County Attorney Towery informed Smith that the Review Committee would meet to discuss Jason's educational needs on April 28. Mrs. Rossi and Smith were invited to attend. Smith received an invitation because the Board had been notified that she was the Rossis' counsel and counsel for both sides had engaged in discussions. In his letter, Towery stated that, "If we are unable to agree on the appropriate program for Jason through the [Review Committee] process, we will proceed with the due process appeal hearing as previously scheduled. It is my hope that we can agree on Jason's program."

Mrs. Rossi and Smith attended the April 28 meeting. The minutes state that the Committee recommended that:

Jason return to the Interlude program.... It is understood that either Mrs. Rossi or the Interlude staff may request another meeting of the [Review Committee] if: (a) Dominion Hospital recommends another type of placement option for Jason[;] or (b) Jason is not progressing adequately in the Interlude program.

The minutes also reflect that Smith stated it was not reasonable to proceed with the due process hearing as scheduled because further information from Dominion Barcroft Hospital might not even then be available. In her affidavit in support of her motion for summary judgment, Mrs. Rossi denies that Smith made this statement. In fact, according to Mrs. Rossi, it was Towery who suggested a continuance. Nevertheless, upon motion of Smith, the hearing officer continued the hearing until June 15, 1987.

After the April 28 hearing, Mrs. Rossi was asked to sign a release permitting the Board to examine Jason's Dominion Barcroft Hospital records and allowing the Board to talk to the hospital staff. Mrs. Rossi refused this request, but informed Towery that the Board could conduct its own evaluation of Jason if it wished. Towery then requested the hearing officer to issue subpoenas duces tecum for Jason's medical reports returnable approximately three and one-half weeks before the hearing. Towery sought permission to depose Jason's doctors. Smith opposed the request, but agreed to make available any

records that would be used at the hearing. The hearing officer found that he did not have authority under Virginia education regulations to require documents to be produced prior to the hearing or to permit discovery depositions and, therefore, denied the requests.

The Review Committee met once again on June 1, 1987. Smith attended this meeting and presented medical reports dated May 28, May 29, and June 1, 1987. These records established Jason's need for a residential placement. That same day, the Board agreed to pay the costs of residential education for Jason. The request for a due process hearing was withdrawn on June 6, 1987.

Plaintiffs' counsel requests reimbursement for 14.4 hours of work performed from March 31 to June 9, 1987, at the rate of $130.00 per hour. The parties stipulated that in *Loudoun County Public Schools v. Lower*, C.A. 83–338 (E.D.Va.), the parties by settlement agreed to fees ranging from $90 to $130 for litigation conducted over a five year period.

### Analysis

A. *Applicability of the HCPA to Pre–Hearing Fees*

Resolution of the question whether fees may be recovered under the HCPA for work performed prior to a due process hearing must begin with an analysis of the statutory scheme. The Education of the Handicapped Act (EHA) was enacted in 1975 to:

assure that all handicapped children have available to them … a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of handicapped children and their parents or guardians are protected.

20 U.S.C. § 1400(c); *see Honig v. Doe*, —— U.S. ——, 108 S.Ct. 592, 596, 98 L.Ed.2d 686 (1988). To accomplish these goals, Congress conditioned federal financial assistance on the states' compliance with substantive and procedural provisions of the EHA. *Honig v. Doe*, 108 S.Ct. at 597.

At the core of the EHA is the individualized education program (IEP): Congress mandated that representatives of school districts, together with teachers, parents and children, develop an IEP for each handicapped child. 20 U.S.C. § 1401(19); *Honig v. Doe*, 108 S.Ct. at 597. The IEP must be reviewed and revised if necessary at least once a year. 20 U.S.C. § 1414(a)(5). To safeguard parents' right to participate in the development of the IEP, the EHA contains various procedural protections. If parents are not satisfied with their child's placement, they may request an impartial due process hearing, seek further administrative review, and ultimately, file a civil action in state or federal court. 20 U.S.C. §§ 1415(b)(1), (2), (c), (e)(2).

In 1986, Congress amended the EHA with the HCPA to allow parents to recover attorneys' fees in certain circumstances. Section 1415(e)(4)(B) of the HCPA provides:

In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.

This subsection concerns civil actions in state and federal courts, thus implying that fees may only be recovered for judicial proceedings. 20 U.S.C. § 1415(e)(2). The majority of courts interpreting section 1415(e)(4)(B), however, have held that fees may be awarded for work performed at the administrative level. *Neisz v. Portland Public School Dist.*, 684 F.Supp. 1530, 1533 (D.Or.1988); *see also School Bd. of Prince William County v. Malone*, 662 F.Supp. 999, 1001 (E.D.Va.1987). These courts have focused on Congress' use of the term "proceeding," as well as the HCPA's legislative history, to find that the section authorizes fees for administrative litigation. *Malone*, 662 F.Supp. at 1001; *Burpee v. Manchester School Dist.*, 661 F.Supp. 731, 732 (D.N.H.1987).

The cited decisions address the availability of fees for parents who prevail after a due process hearing. This Court is faced

with the related and novel question of whether fees may be awarded for pre-hearing work. The answer to this question is unclear from a reading of the statute. Section 1415(e)(4)(D) indicates, however, that the drafters of the Act envisioned pre-hearing fees. That section provides:

No award of attorneys' fees and related costs may be made in any action or proceeding under this subsection for services performed subsequent to the time of a written offer of settlement to a parent or guardian, if—

(i) the offer is made ... in the case of an administrative proceeding, at any time more than ten days before the proceeding begins;

(ii) the offer is not accepted within ten days; and

(iii) the ... administrative officer finds that the relief finally obtained by the parents or guardian is not more favorable to the parents or guardian than the offer of settlement.

20 U.S.C. § 1415(e)(4)(D). This language makes clear the availability of fees when an offer of settlement is made more than ten days before an administrative hearing. The inescapable implication is that fees are recoverable for work performed before the offer is made and thus before a formal proceeding begins. Yet this, by itself, is not conclusive. Because the statute does not specifically speak to this question, it is useful to examine the legislative history of the Act. *See Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984) (where statutory language is unclear, court should look to legislative history).

The HCPA was enacted in response to the Supreme Court's decision in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), which precluded recovery of attorneys' fees for parents who successfully litigated their children's rights to special education. *See Burpee,* 661 F.Supp. at 731–32. Congress acted swiftly to overrule this decision legislatively with the HCPA. S.Rep. No. 112, 99th Cong., 1st Sess. 2 (1985) [hereinafter "S.Rep."]; H.R.Rep. No. 296, 99th Cong.,

1st Sess. 4 (1985) [hereinafter "H.R.Rep."], reprinted in 1986 U.S.Code Cong. & Admin. News 1798; *see Fontenot v. Louisiana Bd. of Elementary and Secondary Educ.,* 805 F.2d 1222, 1223 (5th Cir.1986). The purposes of the statute were thus to extend to parents of handicapped children the same protections and incentives enjoyed by other groups seeking to enforce civil rights laws and to increase access to the procedural rights of the EHA. H.R.Rep. at 5. Both the House of Representatives and the Senate committee reports evince an intention to allow awards for fees incurred in "mandatory state and local administrative proceedings, even where no lawsuit is filed." H.R.Rep. at 5; *see also* S.Rep. at 14. Congress rejected the view that allowing fees for administrative litigation would inject unnecessary adversariness into educational placement and unduly burden school systems. *See* H.R.Rep. at 16 (supplemental views); Note, *The Handicapped Children's Protection Act of 1986: The Award of Attorney's Fees in Litigation Under the Education of the Handicapped Act,* 11 S.Ill.U.L.J. 381, nn. 187–191, 196–200 and accompanying text (1987).

Defendants argue here that fees are allowed only for time spent in formal administrative proceedings. Because this matter was resolved prior to a due process hearing, defendants contend that fees are not recoverable. In support of their interpretation, defendants point to the language in the congressional committee reports authorizing fees for "mandatory" administrative proceedings.

■ At length, the Court finds that, in light of the purpose, language and structure of the HCPA, there is no reason in principle for flatly prohibiting fees incurred before a mandatory administrative proceeding occurs. An award of attorneys' fees for preparation for an administrative hearing and for negotiations with a school system, even where a dispute is resolved prior to a due process hearing, is entirely consistent with the language and spirit of the HCPA. A due process hearing is the necessary first step in litigating disputes between parents and school systems, 20

U.S.C. § 1415(b)(2), and preparation for such a hearing is within the contemplation of the statute. *See* 20 U.S.C. § 1415(e)(4)(D) (prohibiting award of fees for services performed *subsequent* to an offer of settlement made more than ten days before an administrative proceeding, if the administrative officer finds that relief finally obtained is not more favorable than the offer). Congress intended prevailing parents to recover fees for "services performed in connection with [an] administrative proceeding[ ]." H.R.Rep. at 5. Services rendered in anticipation of a due process hearing fall within this authorization.[3]

The School Board asserts that allowing fees in these circumstances encourages prolonging disagreements between parents and the School Board and discourages informal, prompt resolution of disputes. This is wholly unpersuasive; it assumes unscrupulous attorneys and parents seeking goals other than proper placement for the child. Moreover, on those assumptions, it is just as likely that denying fees would protract litigation and thereby increase a school system's liability for fees. One can easily envision a situation in which the parents' attorney, knowing that fees are not recoverable for pre-hearing work performed in the absence of a hearing, would reject negotiations and attempt to gain the desired relief through formal proceedings. On the other hand, if fees are recoverable for pre-hearing work, the parents' attorney would have no incentive to resist settlement, and the school system would have an incentive to settle cases as early as possible to avoid further exposure. Early settlement also has the desirable effect of bene-

fiting the handicapped child whose placement is at issue. The school system is protected from parents and attorneys who unreasonably escalate disputes and protract litigation by the specific terms of the HCPA. 20 U.S.C. § 1415(e)(4)(D), (F). In sum, the Court concludes that reasonable attorneys' fees are available under the HCPA for pre-hearing services.

## B. *The Prevailing Parties*

■ Defendants argue that even if attorney's fees are theoretically available in this case, there should be no award here because plaintiffs were not the "prevailing parties." *See* 20 U.S.C. § 1415(e)(4)(B).

In general, plaintiffs are "prevailing" parties for the purposes of attorneys' fees if they " 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). Under the Fourth Circuit's standard for evaluating whether the plaintiff has prevailed, the district court must determine:

the precise factual/legal condition that the fee claimant has sought to change or affect so as to gain a benefit or be relieved of a burden. With this condition taken as a benchmark, inquiry may then turn to whether as a quite practical matter the outcome, in whatever form it is realized is one to which the plaintiff fee claimant's efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from

---

**3.** Congress intended that the fee provisions of the HCPA be interpreted consistently with those of Title VII. S.Rep. at 14; H.R.Rep. at 5. In *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Supreme Court held that Title VII, 42 U.S.C. § 2000e *et seq.*, authorizes an award of fees for "work done by the prevailing complainant in state proceedings to which the complainant was referred pursuant to the provisions of Title VII." *Id.* at 71, 100 S.Ct. at 2034. The complainant there sought reimbursement for time spent preparing the case for a state administrative hearing, as well as for time spent actually presenting the case. *Id.* at 59, 100 S.Ct. at 2028.

In enacting the HCPA, Congress also looked to cases under 42 U.S.C. § 1988, another fee-shifting provision, for guidance. H.R.Rep. at 5–6; H.R.Conf.Rep. No. 687, 99th Cong., 1st Sess. 6 (1985); *see also Abu–Sahyun v. Palo Alto Unified School Dist.*, 843 F.2d 1250, 1252 (9th Cir.1988). As plaintiffs note, the Supreme Court has held that fees are available under § 1988 when a suit is resolved by consent decree prior to trial. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). Analogously, fees should be available under the HCPA where the complainant obtains the desired relief short of a formal administrative proceeding.

burden when measured against the benchmark condition.

*Bonnes v. Long,* 599 F.2d 1316, 1319 (4th Cir.1979).[4] Given this standard, the question in the instant case is whether the efforts of Mrs. Rossi's attorney contributed in a significant way to the result achieved, i.e., the proper placement of Jason.

According to defendants, the School Board never resisted Mrs. Rossi's attempt to place Jason in an educational program. Rather, the School Board simply requested adequate documentation of the need for such a placement. Defendants argue that the School Board was always willing to place Jason residentially provided Mrs. Rossi could document the request. It was her burden, they claim, to prove that a residential placement was more appropriate than Interlude. *See Bales v. Clarke,* 523 F.Supp. 1366, 1370 (E.D.Va.1981) (the parents bear the burden of establishing that the current educational placement is not appropriate); *Burger v. Murray County School Dist.,* 612 F.Supp. 434, 437 (N.D.Ga. 1984) (the party seeking to change the status quo bears the burden of proof); *see also* 20 U.S.C. § 1415(e)(3) (child should remain in current placement pending litigation over proper placement). Defendants point out that as soon as medical records indicating such a need were presented, the School Board agreed to pay the costs of a residential placement.

In light of the parties' conflicting contentions in this regard, there appears to be a genuine issue as to material fact, namely, whether plaintiffs' efforts contributed in a significant way to the ultimate charge. Accordingly, the Court concludes that an evidentiary hearing is required on this issue.

### C. *Discretion to Deny Fees*

Defendants urge the Court to find that, even if plaintiffs are prevailing parties, "special circumstances" warrant denial of fees. *See Newman v. Piggie Park Enter-*

*prises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). They point to the School Board's relatively rapid response to Mrs. Rossi's request in support of their argument that an award of fees would be unjust. Additionally, they claim that to allow fees in the circumstances at bar merely rewards needless adversariness where it is especially inappropriate, namely in special education decisions.

The Court's discretion to deny fees to a prevailing party under the HCPA is narrow. *Abu–Sahyun v. Palo Alto Unified School Dist.,* 843 F.2d 1250, 1252 (9th Cir. 1988). In assessing whether special circumstances exist which would justify denying fees, the Court should examine "(1) whether awarding fees would further the congressional purpose in enacting the Education of the Handicapped Act, and (2) the balance of the equities." *Id.* at 1253 (citations omitted). Defendants rely on *Dodds v. Simpson,* No. 84–6415–PA (D.Or. Oct. 26, 1987) (unpublished opinion), in which the court refused to award fees in a situation similar to the one at bar. There, the parents obtained the desired placement at a meeting held prior to the due process hearing. The court held that:

> Assuming that under [the HCPA] I have discretion to award fees to a party who obtains the relief sought through settlement prior to an administrative hearing, I decline to award such fees and costs. The Act is designed to resolve issues at the administrative level and to avoid costly litigation. The parties successfully reached a settlement prior to the due process hearing. The parties avoided both the costs of the formal due process hearing and subsequent litigation over [the child's] right to special education. To find defendants liable for fees and costs would create a disincentive for such prehearing settlements.

*Id.* at 7–8. The *Dodds* rationale is not persuasive. Yet the sparse record in the

---

**4.** *See also Hyatt v. Heckler,* 807 F.2d 376, 382 (4th Cir.1986) ("[P]laintiffs may be considered 'principal parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." [quoting *Hensley v.*

*Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)], *cert. denied,* ___ U.S. ___, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987). *Accord Rhoten v. Bowen,* 854 F.2d 667, 669 (4th Cir. 1988).

instant case precludes a confident judgment as to whether the same result should obtain here. More evidence is needed on the parties' initial positions, subsequent changes of those positions and the reasons for those changes. Indeed, the balance of equities is one of the factors to be considered in assessing whether special circumstances exist to warrant awarding fees. *Abu–Sahyun*, 843 F.2d at 1253. The hearing required to determine whether the plaintiffs are "prevailing parties" will also produce the evidence necessary to allow the Court to reach a confident conclusion on whether to deny fees even if plaintiffs qualify as prevailing parties.[5]

An appropriate Order shall issue.

---

**5.** In the event the Court awards fees, the parties are advised that the following decisions are likely to be authoritative in this regard: *Moore v. District of Columbia*, 674 F.Supp. 901 (D.D.C. 1987) (comprehensive discussion); *Barbara R. v. Tirozzi*, 665 F.Supp. 141 (D.Conn.1987) (fees reduced by 20% because of excesses).