E.M., individually, and as guardian ad
litem for L.M., a minor, Plaintiffs,

v.

**MILLVILLE BOARD OF EDUCATION,**
Defendant.

Civ. No. 93–3558.

United States District Court,
D. New Jersey.

April 28, 1994.

John M. Capasso, P.C., Linwood, NJ, for plaintiffs.

Russell E. Paul, Woodbury, NJ, for defendant.

BROTMAN, District Judge:

Presently before the court are plaintiffs' motion,[1] and defendant's cross-motion, for summary judgment. For the reasons set forth below, plaintiffs' motion is granted, and defendant's motion is denied.

## I. Factual and Procedural Background

L.M., an autistic student, attended kindergarten from 1991–92 and "transitional" first grade classes at Reich School from 1992–93 in the Millville School District ("District"). On May 20, 1993, during an Individualized Educational Placement Conference ("IEP") with L.M.'s mother, E.M., the District proposed transferring L.M. to the Mount Pleasant School where she would enter a regular first grade class with Resource Center support. E.M. objected to the change of placement, and requested that L.M. remain at Reich School and be placed in a regular second grade class for the 1993–94 school

1. Although styled as a motion for attorneys fees, plaintiffs' motion is in reality a motion for summary judgment.

year. The District denied her request, and on May 25, 1993, the Millville Director of Special Education sent a letter to E.M. confirming the denial.

E.M. subsequently made a Request for Mediation under N.J.A.C. 6:28–2.6, but never sought an administrative hearing. A mediation conference was held on June 17, 1993 at which E.M. sought continued placement for L.M. at the Reich School in a regular second grade class, with one half day Resource Center support and a Personal Aide. E.M. also sought outside training and technical assistance for the teaching staff in "facilitated communication," an alternative teaching methodology.

The parties successfully mediated the conflict, and signed a Notice of Agreement on June 17, 1993. Under the terms of the Agreement, L.M. would continue attending the Reich School in a regular first grade class with Resource Room support for up to one half day. She would also continue to be serviced by her Personal Aide. The Resource Center teacher, classroom teacher, aide, and other designated or interested school personnel were required to utilize the District's in-house training program in facilitated communication to assist in the development of L.M.'s communication skills.

Plaintiffs asked defendant to reimburse their attorney and expert fees pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Defendant refused, and plaintiffs then filed suit in this court.

Plaintiffs have moved, and defendant has cross-moved, for summary judgment. The following issues are before the court: (1) Whether mediation in accordance with N.J.A.C. 6:28–2.6 is an "action or proceeding" within the meaning of 20 U.S.C. § 1415(e)(4)(B) of the IDEA; (2) If so, whether plaintiffs are a "prevailing party" within the meaning of the IDEA and therefore entitled to reimbursement of reasonable attorney's fees and costs; (3) If so, what is the amount of the attorney's fees and costs to be reimbursed.

## II. *Legal Discussion*

### A. *Is Mediation an "action or proceeding" under the IDEA?*

█ The IDEA was enacted "to assure that all children with disabilities have available to then ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of children with disabilities and their parents or guardians are protected." 20 U.S.C. § 1400(c). Under the IDEA, states are required to establish certain procedural safeguards for children with disabilities and their parents, including allowing parents who dispute their child's IEP to obtain an impartial due process hearing. 20 U.S.C. § 1415; *Field v. Haddonfield Bd. of Educ.,* 769 F.Supp. 1313, 1319 (D.N.J.1991). On their own accord, states may provide mediation to resolve the dispute and avoid the time and expense of an administrative hearing. 34 C.F.R. § 300.506; *Masotti v. Tustin Unified Sch. Dist. Bd. of Educ.,* 806 F.Supp. 221, 223 (C.D.Cal.1992). In New Jersey, either the school or the parent may request mediation as an intermediate step before the administrative hearing. N.J.A.C. 6:28–2.6. Either party may be accompanied and advised by legal counsel or educational experts. *Id.*

The IDEA provides, in pertinent part, that:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B).

Most courts, including those in this district, permit parents who prevail through settlement to recover attorneys fees, even if an administrative hearing was never held. *See, e.g., Barlow–Gresham Union High School District No. 2 v. Mitchell,* 940 F.2d 1280 (9th Cir.1991); *Shelley C. v. Venus Indep. School District,* 878 F.2d 862 (5th Cir. 1989), *cert. denied,* 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748, *reh'g denied,* 494 U.S. 1013, 110 S.Ct. 1312, 108 L.Ed.2d 488 (1990); *Field v. Haddonfield Bd. of Educ.,* 769

F.Supp. at 1319; *E.P. by P.Q. v. Union County Reg. High School Dist. No. 1*, 741 F.Supp. 1144 (D.N.J.1989).

However, only one court in the country has considered whether to award attorney's fees to parents who prevail through mediation. In *Masotti v. Tustin Unified Sch. Dist. Bd. of Educ.*, *supra*, the district court held that resolution of a special education complaint through mediation cannot preclude recovery of attorney fees. The court stated "that the language of the law and the intent of Congress are broad enough to permit an award of fees for services performed before an administrative hearing, either through a settlement process or a mediation process." *Id.* at 224.

Settlement and mediation are flip sides of the same coin, so that to rule out attorneys fees in one instance and not in the other would be incongruous.[2] Moreover, assuming that E.M. had prevailed at the hearing level, she would be entitled to recover fees for work performed "from bottom to top," including work performed at mediation. *See Masotti*, 806 F.Supp. at 225 (quoting *McSomebodies et al. (No. 2) v. San Mateo City School Dist.*, 886 F.2d 1559, 1560 (9th Cir.1989)). Accordingly, awarding attorneys fees to parents who prevail at mediation is entirely consistent with existing authority.[3]

■ Defendant attempts to distinguish *Masotti* from the present case by arguing that in *Masotti* the parents had requested an administrative hearing. Defendant is simply trying to elevate form above substance. Distinguishing *Masotti* on that basis would force parents to initiate administrative proceedings during the pendency of a mediation—a purely mechanical exercise. This court thus finds the distinction drawn by defendant unpersuasive.

This court finds equally unpersuasive defendant' prediction that adopting the *Masotti* holding will "have a chilling effect on dispute resolution through mediation. The very mechanism which allows parties to sit together in a less formal, non-adversarial context to resolve disputes would be jeopardized by the threat of a weighty legal fee hanging over the heads of the Boards of Education." Def. Supp.Br. at 5.

This court adopts the reasoning of the court in *Rossi v. Gosling*, 696 F.Supp. 1079, 1084 (E.D.Va.1988), which when faced with the same argument in the settlement context, countered that

> it is just as likely that denying fees would protract litigation and thereby increase a school system's liability for fees. One can easily envision a situation in which the parents' attorney, knowing that fees are not recoverable for pre-hearing work performed in the absence of a hearing, would

2. In the settlement process, counsel for each party "fight it out" until an agreement is reached. In contrast, mediation uses a neutral third person to facilitate communication and compromise between the parties until an agreement is reached. *See* Black's Law Dictionary 981 (6th ed. 1990) (defining "mediation" as a "process in which a neutral third person, the mediator, helps disputing parties to reach an agreement").

3. A recent Third Circuit opinion further supports the result reached today. *Baumgartner v. Harrisburg Hous. Auth.*, 21 F.3d 541 (3d Cir.1994) arose out of a suit by tenants against the city's housing authority for allegedly violating federal housing rules by developing a modernization plan without consulting them. After the authority consulted with them and drew up a new plan that satisfied both parties, the tenants dropped their suit.

The tenants subsequently requested attorney's fees under 42 U.S.C. § 1988, which the district

court denied because the tenants had not "obtained relief in the form of 'an enforceable judgment, a consent decree or a settlement.'"

The Third Circuit, in vacating the lower court's decision, adopted the "catalyst theory," in which plaintiffs are eligible for fees without obtaining a judgment or entering into a consent decree or formal settlement, so long as they prove that the suit accomplished its objective.

Section 1988 cases such as *Baumgartner* provide guidance to courts interpreting Section 1415 of the IDEA, an analogous fee shifting provision. *See, e.g., Shelly C.*, 878 F.2d at 863. Applying the catalyst theory enunciated in *Baumgartner* to the present case clearly supports plaintiffs' right to recover. As in *Baumgartner*, plaintiffs achieved relief prior to the ultimate proceeding—in *Baumgartner*, a trial, and here, an administrative hearing. But like *Baumgartner*, plaintiffs achieved their primary objective. *See infra*. Thus, just because plaintiffs' success occurred on the mediation, rather than on the administrative level, should not preclude their recovery of attorney's fees.

reject negotiations and attempt to gain the desired relief through formal proceedings. On the other hand, if fees are recoverable for pre-hearing work, the parents' attorney would have no incentive to resist settlement, and the school system would have an incentive to settle cases as early as possible to avoid further exposure.[4]

■ As part of its defense at oral argument, the District contended that it was statutorily required to "mainstream" E.M. in regular classes at Mount Pleasant School.[5] The District further contended that had E.M. simply consented to L.M. remaining at Reich School, the District would have permitted it. Thus, the District argued, E.M. was to blame for forcing the dispute into mediation.

Upon questioning by the court, the District admitted that it never informed E.M. that transferring L.M. to Mount Pleasant was statutorily mandated. Nor did it inform E.M. that she could opt-out of the transfer.[6] The District actually sent a letter to E.M. denying her request for L.M. to remain at the Reich School, without mentioning either of these facts. It is not clear why the District did not consider her objection to the Mount Pleasant transfer as her consent to L.M. remaining at Reich School, since that was her ultimate goal. Obviously, had E.M. known the pertinent facts, she would have provided the necessary consent, kept her daughter at Reich School, and avoided further proceedings and expense.

In this case, the District, by withholding information from E.M., needlessly forced her to hire an attorney and to invoke her procedural rights under the IDEA. To her credit, E.M. sought mediation first. To penalize her for the District's nonfeasance would contravene the spirit of the IDEA. Accordingly, the court finds that attorney and expert fees are recoverable in this case.

### B. *Are Plaintiffs a Prevailing Party?*

To recover attorneys fees and costs under the IDEA, a parent must show that she is a prevailing party. The Supreme Court in *Garland* held that "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989). "If the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the party sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Id.* at 791–92, 109 S.Ct. at 1493. "In sum, to be a prevailing party, the plaintiff's success must be more than purely technical or *de minimis.*" *Id.* at 792, 109 S.Ct. at 1494.

Defendant contends that plaintiffs' success at mediation was merely *de minimis:* L.M. remains at Reich School, participates in the same programs as before, and was not promoted to the second grade.

■ In this circuit, the test for determining whether a party "prevailed" consists of two parts: (1) "whether plaintiffs achieved relief;" and (2) "whether there is a causal connection between the litigation and the relief from the defendant." *Wheeler v. Towanda Area School District,* 950 F.2d 128, 131 (3d Cir.1991).

■ The first part of the test only requires that the plaintiff "achieve[ ] some of the benefit sought in a lawsuit, even though the plaintiff does not ultimately succeed in securing a favorable judgment." *Id.*

■ The court disagrees with defendant's characterization of plaintiffs' relief as *de minimis.* Plaintiffs more than meets the first part of the *Wheeler* test, having pre-

---

4. The court is mindful of the purpose of mediation—to defuse potentially adversarial situations, so as to avoid the legal counsel and costs inherent in an adversarial proceeding. Yet N.J.A.C. 6:28–2.6 specifically permits legal counsel to attend the mediation conference, and to advise the parties.

5. Apparently, but for her disability, L.M. would have attended Mount Pleasant, her "neighborhood school."

6. The court cannot say whether the District intentionally misled E.M. However, the record before the court indicates that this was·but the latest in a series of disputes between E.M. and the District.

vailed on the significant issue of the case—maintaining enrollment at Reich rather than moving to Mount Pleasant. Moreover, a personal aide continued as part of the program, and the District agreed to use an alternative teaching methodology.

Plaintiff also meets the second part of the *Wheeler* test, which may be met "where even though the litigation did not result in a favorable judgment, the pressure of the lawsuit was a material contributing factor in bringing about judicial relief." *Id.* Each of plaintiffs' requests had been refused by the school district prior to mediation. By retaining counsel, E.M. signalled her determination to exhaust all administrative and judicial avenues. The court finds it unlikely that the District would have yielded absent the threat of prolonged litigation. Accordingly, this court finds that E.M. is a "prevailing party" under the IDEA.

### C. *Amount of Fees to be Awarded*

Plaintiffs seek $1485.00 for legal work performed during mediation, and an additional $2520.00 for legal work performed in litigating the fee issue. Plaintiffs also seek $19.60 in attorney costs. The court must determine a reasonable amount of fees and costs to be awarded.

Where a plaintiff achieves only partial success, the lodestar method of calculating attorneys fees may create a windfall for the attorney. *Field,* 769 F.Supp. at 1322. "However, where '[m]uch of counsel's time ... [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis[,]' ... the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)).

■ Of all her requests, only the request for L.M. to attend a second, rather than first grade class, was not resolved in plaintiffs' favor. Because such a small portion of plain-

tiffs' case was unsuccessful, it would be impossible for the court to divide the hours expended on a claim-by-claim basis.

■ The court notes that 100% recovery of fees incurred during mediation, as in this case, will often be unavailable. The nature of a mediation proceeding requires attorneys to perform tasks which not inherently legal in nature, and thus not fully compensable.[7]

■ After deducting 2.1 hours ($315.00) of work performed prior to the execution of the retainer agreement, the court will reduce the remaining amount ($1170.00) by 25% ($292.50) to account for the partial defeat of plaintiffs' claim, as well as the hybrid nature of mediation work. In total, the court will award $877.50 for work related to the mediation.

■ Fees incurred in enforcing the attorneys fees provision are also recoverable under the IDEA. *See, e.g., Masotti, supra.* The amount requested by plaintiffs is reasonable. Accordingly, the $2520.00 in fees for litigating this issue will be awarded in full.[8]

In total, the court will award $3397.50 in attorneys fees and $19.60 in costs to plaintiffs.

■ In addition to attorney fees and costs, plaintiffs also seek to recover $500 in expert fees. In the settlement context, parents may recover fees for expert services under the IDEA. *Aranow v. District of Columbia,* 791 F.Supp. 318 (D.D.C.1992); *Field, supra.* But to be recoverable, the expert services must have been "necessary for the preparation of the parent or guardians case in the action or proceeding." *Field,* 769 F.Supp. at 1323 (quoting H.R.Conf.Rep. No. 687, 1986 U.S.Code Cong. & Admin.News 1798, 1808).

■ The court finds that while helpful, the use of the expert witness was not "necessary." As plaintiffs implied at oral argument, the expert witness was retained more with an eye toward preparing for a future

---

7. Such hybrid legal/administrative tasks might include, as in this case, requesting school records or scheduling mediation dates.

8. This amount includes 3.5 hours ($525.00) in time spent preparing for, traveling to, and attending oral argument.

administrative hearing. The expert never prepared a written report, nor did she ever appear or testify at the mediation.

Nonetheless, the expert report was not entirely valueless, in that plaintiffs ultimately prevailed on the significant issue of the case—maintaining L.M.'s placement at Reich School. Accordingly, the court will order defendant to reimburse $100 of the expert fee.

### III. *Conclusion*

This court will order the District to reimburse plaintiffs $3397.50 in attorneys' fees and $119.60 in attorney costs and expert fees.

### ORDER GRANTING MOTION FOR ATTORNEYS FEES/SUMMARY JUDGMENT AND DENYING CROSS–MOTION FOR SUMMARY JUDGMENT

This matter having come before the Court on the motion of plaintiffs for attorneys fees (i.e., motion for summary judgment),[9] and cross-motion of defendant, for summary judgment; and

Having considered the submissions of the parties; For the reasons set forth in the Court's opinion of this date;

**IT IS** on this 28th day of April, 1994 hereby **ORDERED** that plaintiffs' motion for attorneys fees (i.e., summary judgment) is **GRANTED,** and defendant's cross motion for summary judgment is **DENIED;**

IT IS **FURTHER ORDERED** that defendant pay plaintiffs $3397.50 in attorneys' fees and $119.60 in attorney costs and expert fees, for a total of $3517.10.

---

9. Although styled as a motion for attorneys fees, plaintiffs' motion is in reality a motion for summary judgment.