J.S., a minor child by his parents, D.S. and H.S., Plaintiffs,

v.

LENAPE REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION, Defendant.

No. CIV.99–CV–2456(JBS).

United States District Court, D. New Jersey.

June 20, 2000.

Herbert D. Hinkle, Lawrenceville, NJ, for Plaintiffs.

John C. Barnoski, Archer & Greiner, PC, Haddonfield, NJ, for Defendant.

## OPINION

SIMANDLE, District Judge:

### INTRODUCTION

Plaintiffs seek reimbursement of attorney's fees and costs incurred in connection with their efforts to ensure that J.S., a learning disabled student, was placed in a special education class at Lenape High School instead of a similar class at Cherokee High School, another school within the same School District. After filing an administrative action in state court, plaintiffs eventually succeeded in obtaining their preferred placement for J.S. Plaintiffs now contend that this Court should order defendant, the Lenape Regional High School Board of Education ("the District"), to reimburse plaintiffs for their litigation costs pursuant to the attorneys' fees provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(i)(3)(B) & (C).

Presently before the Court is defendant's motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. The main issue for decision is whether school district's transfer of a learning-disabled student from one school to another within the same district, where that transfer does not effect a substantive change in the child's Individual Education Plan (IEP), constitutes a "change in educational placement".

For reasons discussed herein, the Court finds that plaintiffs have failed to create a genuine dispute as to whether the intra-district transfer at issue in this case involved a "change in educational placement" for which attorney's fees are recoverable under the IDEA. Accordingly, the Court will deny plaintiffs' application for attorneys' fees, and will grant defendant's motion for summary judgment against plaintiffs' claims in this case.

## BACKGROUND

J.S. is a sixteen-year old male student who has mental retardation and characteristics of Prader–Willi [1] and Angelman [2] syndromes. (Affidavit of Harriet Silverman at ¶ 2.) The Lenape District has classified J.S. as eligible to receive special education and related services pursuant to the IDEA. (*Id.* at ¶ 3.)

After J.S. had completed middle school and was ready to transition into high school, the Lenape District determined that Cherokee High School was the appropriate class setting for J.S. In March 1998, plaintiffs filed an Intra–District Transfer request to have J.S., then a 15–year old, placed into a self-contained special education class at Lenape High School for the 1998–99 school year rather than a class at Cherokee High School, defendant's proposed placement. (*Id.* at ¶ 4.) Plaintiffs made this request based on their judgment that the class at Lenape high school was more fluid and less academic than the class at Cherokee, had more students at J.S.'s relatively low functioning level, and that the Lenape class presented a better overall fit for J.S. (Social Service Evaluation at 1, Pl.Ex.J.) By letter dated June 8, 1998, defendant denied plaintiffs' request, main-

taining that Cherokee High School was the appropriate placement for J.S. (*Id.* at ¶ 5.)

Plaintiffs disputed defendant's decision to place J.S. at Cherokee, and requested a special education "due process" hearing pursuant to N.J.A.C. 6A:14–2.7 to resolve the dispute. (*Id.* at ¶ 7.) The sole relief sought at this hearing was placement of J.S. at Lenape High School rather than Cherokee High School. The New Jersey Department of Education sent the dispute to the Office of Administrative Law for a hearing, which hearing was assigned to the Honorable Steven Reback, ALJ. During the course of this dispute, plaintiffs retained Jaclyn Hoffman, Ph.D., a psychologist, who opined that Lenape High School, rather than Cherokee High School, was the proper placement for J.S. because of the greater number students at Lenape with low functioning levels, like J.S.'s. (*Id.* at ¶¶ 12–14.) Defendant's experts Barbara Rell, Ed.D., and Lois Strauss, Ed.D., came to the opposite conclusion, finding that Cherokee's class, which was of a smaller size and was geographically closer to plaintiffs' home, was the proper placement for J.S. Accordingly, Rell and Strauss found that there was no compelling reason to switch J.S. to Lenape. (*Id.* at ¶ 15; Pl.Ex. H.) Having considered the parties' conflicting reports, the ALJ directed the parties to submit to an independent expert's assessment. They did so, and the independent expert concluded on December 8, 1998 that Lenape High was the best placement for J.S. (*Id.* at ¶ 17; Pl.Ex.J.) On December 30, 1998, defendant agreed to place J.S. at Lenape High School, and plaintiffs withdrew their administrative complaint. (*Id.* at ¶ 17; Pl.Ex.I.) After defendant refused plaintiff's demand for reimbursement of attorney's fees incurred

---

**1.** Prader–Willi Syndrome is defined as "a congenital disorder characterized by rounded face, almond-shaped eyes, strabismus, low forehead, hypogonadism, hypotomia, insatiable appetite, early hypotonia, failure to thrive, and mental retardation." *Dorland's Illustrated Medical Dictionary* 1638 (28th ed.1994).

**2.** Angelman syndrome is a congenital abnormality which results in characteristic dysmorphic features and abnormally cheerful behavior. *See Beck v. Secretary of Dept. of H.H.S.*, 1990 WL 293859 (Cl.Ct. Nov. 02, 1990) (citing Dr. Harry Angelman, *"Puppet" Children, A Report on Three Cases*, 7 Develop. Med. Child. Neurol. 681–88 (1965)).

in litigating their administrative complaint, plaintiffs filed the present lawsuit. (Pl.Ex. M.)

## DISCUSSION

### A. Summary Judgment Standard

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080–81 (3d Cir.1996); Kowalski v. L & F Prods., 82 F.3d 1283, 1288 (3d Cir.1996); Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. denied, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984).

### B. Whether Plaintiffs' Challenge of J.S.'s Placement at Cherokee High School Effected a "Change in Educational Placement"

Plaintiffs' assert that their successful efforts to have J.S. placed at Lenape High School entitle them to reimbursement of attorneys' fees under relevant provisions of the IDEA, 20 U.S.C. § 1400 et seq. Under the IDEA, children with disabilities are entitled to a free appropriate education. Once a child has been "classified" as IDEA-eligible, the special education program and related services to be provided to the classified student are to be described in an Individual Education Plan (IEP) developed with input from the child's parents. Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). The services must be provided in the closest, least restrictive environment, see N.J.A.C. 6:28–1.1(b)(1), and must be "reasonably calculated to enable the child to receive educational benefits". See Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206–7, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

Under the IDEA, states are required to establish certain procedural safeguards for children with disabilities, including allowing parents who dispute changes to their child's IEP to obtain an impartial due process hearing. E.M. v. Millville Bd. of Educ., 849 F.Supp. 312, 314 (D.N.J.1994) (citing 20 U.S.C. § 1415). At this hearing, the parents are to be given the "opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child". 20 U.S.C. § 1415(b)(6). Federal law authorizes the recovery of reasonable attorneys' fees and costs when the parent of a child with a disability is the "prevailing party" in litigation concerning challenges to identification, evaluation or placement issues. 20 U.S.C. § 1415(i)(3)(B). Therefore, a parent may recover attorneys' fees and costs in situations where they have successfully challenged a change to the "educational placement of the child". See 20 U.S.C. § 1415(b)(6).

In this case, plaintiffs sought only one form of relief when they initiated litigation at the state level: J.S.'s placement at Lenape High School. As detailed above, plaintiffs ultimately succeeded. Thus, in a general sense, plaintiffs can be said to have prevailed in their efforts to place their son at a particular school. The question remains, however, whether plaintiffs are entitled to reimbursement of attorneys' fees incurred in connection with their efforts.

Defendant does not dispute that plaintiffs succeeded in obtaining the relief they sought. Nevertheless, defendant maintains that plaintiffs are not entitled to attorneys' fees under the IDEA. This is so, defendant argues, because J.S.'s move from Cherokee High School to Lenape High School was not a "change in educational placement" for the purposes of the IDEA. Therefore, defendant contends, al-

though the parents prevailed in their efforts to have J.S. transferred from one school to another, their success did not effect a change in educational placement for the purposes of the IDEA.

Defendant maintains that J.S.'s IEP at the two schools was "substantively identical, *i.e.,* the same subject matter is taught in each class, as are the same teaching methods used in each class." (Aff. of Michael A. Comman, Ph.D., Director of Special Services for the Lenape District, Def. Ex.A.) Indeed, the factual record shows that J.S.'s program of instruction at the two schools is virtually identical, and that the only tangible dissimilarity between the two schools is the functioning abilities of the schools' students in the special classes. As is evident from the conclusions of one of the independent evaluators employed to help the parties determine whether J.S. would be better off at Lenape or Cherokee, the primary difference between the two classes is that there is a greater range in the functioning levels of the children in the Lenape program and that the overall functioning level of the students at Lenape is lower than that of the Cherokee students:

> It appears that in either program [J.S.] would need a personal aide to help him maintain his attention to tasks. It also appears that in the Lenape program the structure of the class is more flexible, adapting to the needs of the wider range of skill levels, and in this program [J.S.] may be able to experience more assimilation into the group than in the Cherokee program where his classmates appear to be fairly consistently in the 3rd or 5th grade range.

(Report of New Jersey Certified School Psychologist Elizabeth B. Cusack, M.A. at 12, Pl.Ex.J.) According to the independent psychologist having assessed the two schools, then, the main difference between the two class settings was not a substantive one, but rather is that the schools have a slightly different student demographic. Specifically, at Cherokee, J.S. would be on the low end of the range of students' functioning levels, while at Lenape, he would be closer to the average.

Thus framed, the main question in this case is whether an intra-district transfer of a learning disabled student, where the class settings are virtually identical except for location and minor differences in the student makeup of the class, constitutes a "change in educational placement" for the purposes of the IDEA.

As this issue is one of statutory interpretation, the Court's goal is to determine what Congress meant by the phrase "change in educational placement." "To determine Congress' intent, we begin with the text of the statute in question". *Health Maintenance Org. v. Whitman,* 72 F.3d 1123, 1127 (3d Cir.1995) (citations omitted). Here, § 1415(b)(6) of the IDEA simply provides that a parent may have a hearing concerning changes in educational placement, and § 1415(i)(3)(B) allows for recovery of attorneys' fees for a prevailing parent. However, the IDEA does not define what is meant by a "change in educational placement" giving rise to a right to reimbursement of attorneys' fees. Because there is no clear statutory definition for "educational placement", the Court turns to examine judicial construction of this phrase.

Preliminarily, the Court notes that there are no decisions from within this Circuit where a court has considered whether a transfer from one high school to another constitutes a "change in educational placement". However, analogous case law developed by this and other Circuits suggests that a mere switch in schools is not a "change in placement" for the purposed of the IDEA.

The Third Circuit has provided that the question of whether a change in a child's educational routine is a "change in placement" is a fact-specific one. Specifically, the court stated that "the question of what constitutes a change in educational placement is, necessarily, fact specific...."

Thus, in determining whether given modification in a child's school day should be considered a 'change in educational placement', we should focus on the importance of the particular modification involved." *DeLeon v. Susquehanna Comm. Sch. Dist.*, 747 F.2d 149, 153 (3d Cir.1984) (Becker, J.) (citations omitted). Rather than a hearing for every minor violation, however, the *DeLeon* court provided that "[t]he touchstone in interpreting section 1415 has to be whether the decision is likely to affect in some significant way the child's learning experience." *Id.*

■ Under the framework provided by *DeLeon*, then, only matters that will significantly impact the child's learning should be considered a change in educational placement for the purposes of the IDEA. Consequently, the question in this case becomes a fact specific one: whether, based on the totality of the evidence before the Court, the change from Cherokee to Lenape High School will have a significant affect upon J.S.'s learning experience.

■ Turning to examine the effects of J.S.'s transfer, the Court finds that, based on the evidence of record, a reasonable fact finder could not conclude that there is a substantive difference between the education that J.S. will receive at Lenape as opposed to Cherokee. Plaintiffs have

maintained from the outset that a switch from Cherokee to Lenape constitutes a material change to J.S.'s IEP. However, this assertion is not borne out by the record. There is no curricular difference between the Lenape and Cherokee settings. As discussed above, the two class settings at issue are virtually identical, and the main difference between the schools is the functioning level of the students. Other facts in evidence tend to show that Cherokee is an entirely appropriate placement for J.S.: the class size is smaller, and the school is a shorter bus ride from J.S.'s home. Accordingly, plaintiffs have failed to adduce sufficient evidence to create a genuine dispute as to whether J.S.'s learning will be significantly affected by the switch to Lenape High School,[3] and the Court finds as a matter of law that plaintiffs have not established that transferring J.S. from Cherokee to Lenape High School was a "change in educational placement" for the purposes of the IDEA.[4]

The fact that the school board decided to accede to the plaintiffs' request that J.S. be placed at Lenape is immaterial. Although the parents have succeeded in obtaining the relief they sought—placing J.S. in what his parents thought to be the best educational placement—such a change is not necessarily one that will significantly

---

3. If, for example, plaintiffs had come forward with evidence that the Cherokee program is of poorer quality than Lenape High School's, or that the Lenape program was tailored to J.S.'s particular needs, then the Court might be inclined to consider the transfer as effecting a significant change in J.S.'s learning experience. There is no such evidence in the record here.

4. The Court's holding today is consistent with the decisions of the federal courts of appeals to have considered similar transfers. *See e.g. Bd. of Educ., No. 218, Cook Cty. v. Bd. of Educ.*, 103 F.3d 545, 549 (7th Cir.1996) ("where fiscal concerns cause a student to be transferred, the courts focus not on the school, but on the child's general education program"); *Weil v. Board of Elementary and Secondary Education*, 931 F.2d 1069 (5th Cir.), *cert. denied* 502 U.S. 910, 112 S.Ct. 306, 116 L.Ed.2d 249 (1991) (transfer from one

school to another within same district not a change in "educational placement"); *Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577 (D.C.Cir.1984) (no change in educational placement where District switched student from residential program in a private hospital to a public institution); *Tilton v. Jefferson County Bd. of Educ.*, 705 F.2d 800, 804 (6th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 998, 999, 79 L.Ed.2d 231 (1984) (transfer from one school to another with comparable program not a change in educational placement); *Concerned Parents & Citizens for Continuing Educ. at Malcolm X (PS 79) v. New York City Bd. of Educ.*, 629 F.2d 751, 754 (2d Cir.1980), *cert. denied* 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981) (transfer from one school to another within same district with similar but less innovative programs not a change in educational placement within meaning of § 1415).

change J.S.'s learning. The record is clear that J.S. will encounter the same educational plan at either school with only slight variations in the makeup of the student body. It is also immaterial that the parents' placement choice was supported by an independent psychologist. The psychologist's conclusion that Lenape was a better placement for J.S. was founded only upon differing student demographics, not on curricular content or educational enhancements. An intra-district transfer based upon subjective preferences rather than upon substantially different educational environments is not a "change in educational placement". The particular facts of this case show that, although the Lenape District chose to accommodate the plaintiffs' choice of schools for J.S., this accommodation did not effect a significant change in J.S.'s learning experience. Accordingly, the Court holds that plaintiffs have failed to show that J.S.'s intra-district school transfer was a "change in educational placement" within the meaning of § 1415. Thus, the claims litigated in the administrative claims below do not give rise to attorneys' fees under the IDEA.

The Court cautions that its holding today is mandated by the facts of this case and is not to be taken as an invitation to public schools to ignore the procedural requirements of the IDEA fair hearing process. Under different circumstances, it is possible that an intra-district transfer could be considered a "change in placement" under the IDEA. The plaintiffs' burden in such a case will be to show that the transfer significantly affected the student's learning experience, pursuant to *De-Leon, supra*. Plaintiffs in this case have not made such a showing, and summary judgment must be entered against their application for attorneys' fees.

### CONCLUSION

For the foregoing reasons, the Court will deny plaintiffs' application for attorneys' fees pursuant to the IDEA, and will grant defendant's motion for summary judgment. The accompanying Order is entered.

### *ORDER*

THIS MATTER having come before the Court on plaintiffs' motion for attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B), and on defendant's motion for summary judgment pursuant to Rule 56, Fed.R.Civ. P., and the Court having considered the parties' submissions and the evidence of record, and for the reasons expressed in today's Opinion;

IT IS this ___ day of June, 2000

**ORDERED** that plaintiffs' application for attorneys' fees be, and hereby is, **DENIED;** and it is further

**ORDERED** that defendant's motion for summary judgment be, and hereby is, **GRANTED,** and this case shall be closed.